Keating, J.
After a trial on an indictment charging murder in the first degree, Bex Lampkins was convicted of murder in the second degree on May 16, 1950. He was sentenced as a second felony offender to 50 years to life imprisonment. This sentence was later reduced to 30 years to life.
Lampkins applied for a writ of error coram nobis to the Supreme Court, Bronx County, in July, 1965. The application was denied without a hearing, and the denial was unanimously affirmed by the Appellate Division. (27 A D 2d 648.)
The principal contention of Lampkins on this appeal is that he was improperly denied his right to appeal by one of his assigned counsel. Apparently, Lampkins had three assigned counsel. In his affidavit, Lampkins alleges that his attorney perpetrated a fraud upon him ‘ ‘ by permitting the appeal to be dismissed for lack of prosecution, and at the same time knowing *140 that petitioner did not want to abandon the appeal and was clearly ignorant of his appeal rights ’ ’.
The letters of his attorney evince a certain strategy which he executed on behalf of Lampkins. He did not prosecute the appeal to the Appellate Division because he was fearful that, upon a second trial of the action, Lampkins might be convicted of murder in the first degree. In our view, this strategy appears reasonable. If, after an attorney explains such strategy to a defendant, the defendant agrees to it, he should not, of course, be heard to complain later. As a matter of policy, any other rule would undoubtedly give rise to scores of accusations that the advice of counsel on which a defendant acted was arguably unwise. The degree of judiciousness of an attorney’s advice to a defendant should not become a subject of subsequent inquiry, permitting vacaturs of judgments of conviction where courts disagree with an attorney’s assessment of a case. (People v. Tomaselli, 7 N Y 2d 350.)
Thus, the crucial factor is not whether the attorney’s view of the probability of a subsequent conviction of Lampkins of murder in the first degree was correct but, rather, whether Lampkins agreed to the strategy.
The letters which Lampkins has annexed to his moving papers suggest the possibility that he did not agree to his attorney’s strategy and wished, instead, to prosecute his appeal, regardless of the possible consequences. In the final analysis, that choice was his, not his attorney’s. The first letter, dated April 3, 1951, two days before Lampkins’ appeal was dismissed, is addressed to Justice Peck. In it, Lampkins states that he has written a letter to his assigned counsel asking why his appeal is on the Appellate Division’s calendar for dismissal. He asks: “ I pray that this Court * * * does not dismiss the appeal which is my last hope for freedom. ’ ’
The attorney answered Lampkins ’ inquiry about his appeal in what is, perhaps, the most significant of all the letters annexed. After stating that he has received Lampkins’ letter of April 3, the attorney replied:
“ The motion that you mention was merely a pro forma application by the District Attorney’s office to dismiss the appeal.
‘‘ It had long ago been decided that it was not in your best interest to perfect the appeal ”.
*141 Although this language is sufficiently ambiguous to be susceptible to varying interpretations, it is possible that the attorney was explaining that he and the other two assigned counsel had agreed to this strategy, not that Lampkins had consented or even known of it.
Moreover, after Lampkins’ appeal was dismissed, he undertook what turned out to be a Herculean task, as he attempted to obtain a copy of the minutes of his trial. Lampkins has annexed no less than 10 letters addressed to him in response to his inquiries about obtaining the minutes. The first is dated August 1,1951 and the last — December 15, 1962. They include a letter from the Chief Clerk of the Bronx County Court suggesting that he write to the official court reporter, a letter from the official court reporter suggesting that he write to his three assigned counsel, letters from one assigned counsel suggesting that he write to the court reporter, letters from the other two assigned counsel suggesting that he write to the District Attorney’s office, and a letter from the District Attorney’s office suggesting that he write to his assigned counsel.
Although all of this took place after Lampkins’ appeal was dismissed by the Appellate Division, nevertheless, it immediately followed Lampkins’ letter to Justice Peck, requesting that his appeal be saved, and his letter to his attorney, asking why his appeal was on the dismissal calendar. When, in addition, the attorney’s ambiguous reply letter is considered, Lampkins has succeeded in indicating a course of action on his part with respect to his appeal which, at least, raises an issue of fact regarding whether he consented to the strategy of allowing his appeal to die in the Appellate Division for want of prosecution.
In People v. Adams (12 N Y 2d 417, 420) the defendant alleged that his appeal had been dismissed without his knowledge. We stated: “ Obviously, if defendant’s sworn petition speaks truthfully, his right to appeal has been * * * effectively frustrated ’’.
Lampkins ’ exhibits as well as his affidavit appear to raise the issue that he might not have had knowledge of his rights until it was virtually too late for him, acting alone, to save his appeal. This places Lampkins within the ambit of the principle we enunciated in People v. Adams (supra). Moreover, since other exhibits raise the issue that, as soon as Lampkins had knowledge *142 of his appeal rights, he withheld his consent to the dismissal strategy, his appeal rights were (if he substantiates the inferences) as “effectively frustrated ” as were Adams’. Accordingly he is, at least, entitled to a hearing on these factual questions. (See, also, Desmond v. United States, 333 F. 2d 378; People v. Hairston, 10 N Y 2d 92; People v. Hill, 8 N Y 2d 935.)
In People v. Adams (supra) we indorsed the use of coram nobis to explore the validity of a dismissal of an appeal from a criminal conviction. We noted that a denial of a motion made to the Appellate Division to vacate the dismissal is a nonfinal order not appealable to our court. (See Cohen and Karger, Powers of the New York Court of Appeals, § 36, subd. [c], p. 144.) In this case, Lampkins made a motion to the Appellate Division to reinstate his appeal. The motion was denied. An application to the Appellate Division for leave to appeal from the denial is being held in abeyance because of the problem of appealability.
Defendants who claim that their appeals were improperly dismissed should not move for reinstatement in the Appellate Division, if they wish an appeal to our court. We have expanded the use of eoram nobis for such claims. If a lower court finds that a defendant’s allegations regarding his deprivation of his appeal rights are substantiated, the lower court can make findings of fact in this respect and send the case up to the Appellate Division. If the Appellate Division does not agree with the lower court’s finding and reverses, refusing to reinstate the appeal, an appeal to our court from this reversal will lie under subdivision 6 of section 519 of the Code of Criminal Procedure.
Thus, a coram nobis application to a lower court will provide appealability to our court on this issue, while a motion to the Appellate Division to reinstate the appeal will not.
The defendant has also argued on this appeal that his trial counsel was incompetent. The most damaging statement which the attorney made in his letters was that he thought the facts warranted no more than a manslaughter conviction. Thus, it might appear that he should have moved to set aside the verdict at the end of the trial. On the other hand, he indicated a fear that the District Attorney might then use other evidence in his possession at a subsequent trial. He also mentioned that the Trial Judge was dissatisfied with the murder in the second *143 degree verdict and, in fact, had reprimanded the jury for not finding Lampkins guilty of murder in the first degree.
These letters do not, in our view, suffice to show an effective denial of representation. As we stated in People v. Tomaselli (supra, p. 356): “ [T]here is a denial of effective representation of counsel only when the representation given is so patently lacking in competence or adequacy that it becomes the duty of the court to be aware of it and correct it. Indeed, to hold otherwise would require a rule that a conviction must be vacated solely on the ground that assigned counsel was negligent or otherwise at fault in performing his duty.”
Accordingly, the order of the Appellate Division should be reversed and the case remanded to the Supreme Court for a hearing to determine the sole issue of whether the defendant was unconstitutionally deprived of his right to appeal.
Opinion by Judge Keating. All concur, Judge Breitel in result, except Judges Van Voorhis and Scileppi who dissent and vote to affirm.
Order reversed and matter remitted to Supreme Court, Bronx County, for a hearing in accordance with the opinion herein.