UNITED STATES of America ex rel.
Joseph DI NIRO, Petitioner,

v.

Vincent R. MANCUSI, Warden of Attica State Prison, Attica, New York, Respondent.

No. 68 Civ. 4743.

United States District Court
S. D. New York.

April 29, 1969.

Joseph Di Niro, pro se.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for respondent; Hillel Hoffman, Asst. Atty. Gen., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, indicted for murder in the first degree and for attempted murder in the first degree, was convicted after a trial to a jury of manslaughter in the first degree and assault in the third degree. Currently serving a ten to fifteen year sentence at Attica State Prison, he seeks his release upon a federal writ of habeas corpus. He asserts that his federal constitutional rights were violated (1) when the police, at a stationhouse interrogation, elicited an inculpatory statement in violation of his right against self-incrimination and his right to counsel, and (2) by the trial court's failure to correct, during the prosecutor's summation, his erroneous statement that the jury could find petitioner guilty of the fatal shooting, even if it found that his companion and not he had fired the shot. On direct appeal from the judgment of conviction, the Appellate Division affirmed without opinion.[1] Leave to appeal to the Court of Appeals was denied.

The first degree murder charge was based upon the shooting, with the resultant death, of Joseph Capel, a hotel clerk; the attempted first degree murder charge was based on the shooting of Suddith Singh. Petitioner was charged with firing the fatal shot while in a hotel lobby together with his companion, Albert Matera.

The jury could have found that petitioner and Matera, after a night of drinking, wound up at a bar where, after several drinks, petitioner tried to date a barmaid, who refused because of his condition, but gave him a slip of paper with her name and address, the Remington Hotel, the hotel where Capel, the decedent, was the night clerk; that several hours later petitioner and Matera went to the hotel; that Capel refused to say whether the girl lived there; that petitioner left, saying, "If I find out she's here, I'm going to take care of you." He soon returned with Matera, who thrust an unsheathed sword cane toward Capel, whereupon petitioner fired a shot from a pistol into Singh, who, falling to the ground, immediately heard another shot and saw Capel go down. Capel died almost instantaneously; Singh lived to tell the tale, and was the principal witness against petitioner.

Petitioner's first claim[2] centers about the receipt in evidence of an oral admission made to one of the detectives during petitioner's interrogation at the stationhouse following his arrest, when petitioner acknowledged that some time before the shooting he had a gun, which he carried in his waistband; that he had some extra shells in his pocket; that he carried the gun because "You never know when you're going to run into some trouble."

The admission was important because the barmaid testified that when petitioner tried to date her, in pulling something out of his pocket a bullet dropped to the

---

1. People v. Di Niro, 28 A.D.2d 1207, 284 N.Y.S.2d 843 (1st Dep't 1967).

2. A review of the state record indicates that petitioner presented only the second of the two claims here advanced as an alleged federal constitutional violation. It appears that an avenue for state relief is still available. People ex rel. Keitt v. McMann, 18 N.Y.2d 257, 262, 273 N.Y.S.2d 897, 900, 220 N.E.2d 653 (1966); cf. United States ex rel. Gallo v. Follette, 270 F.Supp. 507, 516 (S.D. N.Y.1967); Reed v. Follette, 268 F.Supp. 936, 939 (S.D.N.Y.1967). The court, of course, could now confine its consideration to the exhausted claim. United States ex rel. Levy v. McMann, United States ex rel. D'Antonio v. Follette, 394 F.2d 402, 404–405 (2d Cir. 1968). But since it has reviewed the voluminous state record, it deems it expedient to decide the claim upon the merits and thus eliminate further time-consuming action on the part of state and federal judges.

floor; because Singh testified that petitioner, and not Matera, shot him, but he could not say who fired the shot that killed Capel; because the prosecution was unable to show that the shots fired, although they were of the same calibre, had come from the same gun.[3] Matera was not named in the indictment under which petitioner was tried, nor was he called as a witness by either side, although he was available.

Petitioner's defense centered about the issue of intent, based upon a claim that due to drug addiction and the ingestion of a combination of Librium and a large quantity of alcohol his powers of premeditation and deliberate conduct had been impaired—a view evidently accepted by the jury.

The case is of pre-Miranda vintage,[4] and petitioner concedes that its per se warning requirements do not apply.[5] Petitioner, however, seeks to bring himself within the rule of Escobedo v. Illinois.[6] However, the facts of the instant case bear no resemblance to those in Escobedo, where the suspect had requested and been denied an opportunity to consult with his previously retained lawyer, who was outside the interrogation room, vainly demanding he be admitted to see his client. Petitioner concedes, and the record overwhelmingly bears out, that at no time during his questioning by the police officers, when he made the admission, did he have or request an attorney, whether his own or any other. The record is equally clear that later, when an assistant district attorney commenced to interrogate petitioner, he was advised of his right to remain silent and to counsel, and that when he indicated for the first time he wanted to speak to a lawyer, questioning was at once discontinued and no statement was taken from him.

Petitioner seeks to expand the scope of Escobedo by his allegation that at one point at the stationhouse he asked to speak to his family, and accordingly he urges "[i]t is not known from the record whether he intended to ask his family or wife to enlist the aid of an attorney for him. * * * " While there is a dispute whether he made any such request, its denial, assuming that it had been made, would not by itself, under the Escobedo rule, render his statement inadmissible upon the trial.

So, too, must petitioner's further and related charge, that the admission was not voluntary but the product of coercion, fail. At the outset there is a question whether petitioner has waived the right to federal consideration of this aspect of his claim. The issue of voluntariness of the admission was raised by petitioner upon his trial, and in consequence a Huntley hearing was held out of the presence of the jury.[7] Petitioner testified that he was struck once in the eye while at his apartment, and later at the stationhouse was again struck several times and also threatened by police officers, whom he could not identify. The police officers who played a role in petitioner's arrest or had him in custody contradicted petitioner and denied his charges. The evidence challenging petitioner's claim was so substantial that when the Huntley hearing was nearing its close and it appeared that a finding by the court was compelled that petitioner's charges were groundless, his counsel, to ward off further cross-examination and to avoid "a waste of time" and "double cross-examination," conceded, for Huntley hearing purposes, that the court could find the statement was voluntarily made, the issue, however, ultimately to be left for

---

3. The ballistics expert testified that both bullets were deformed by their impact with the respective bodies, and as a result he could not determine whether both were fired from the same gun.

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R3d 974 (1966).

5. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

6. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

7. People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

jury determination. The concession was made with petitioner's consent.

 Ordinarily, such a decision not to avail oneself of applicable state procedures may, under appropriate circumstances, constitute a waiver which would foreclose consideration of petitioner's claim.[8] However, under New York's criminal procedure governing motions to suppress allegedly involuntary confessions or admissions, the failure to make a motion in advance of trial is not deemed a waiver of the right to challenge the claimed confession or admission upon the trial as involuntarily obtained.[9] So, too, the waiver of the Huntley hearing determination did not foreclose petitioner's right to present his claim to the jury that the admission was constitutionally impermissible. Under this circumstance there is no basis for any claim there was an "intentional relinquishment or abandonment" of his claim that the admission was involuntary and the result of coercion,[10] and petitioner was not foreclosed from presenting the constitutional issue in the federal courts.[11]

 But considered on its merits, and accepting petitioner's allegations and his trial testimony on the subject at their face value, the claim of involuntariness cannot be sustained. Petitioner does not contend, nor does it appear from a reading of the trial and Huntley hearing minutes, that taking into account the totality of circumstances surrounding the making of the admissions,[12] his will was in any way overborne at the time he made the admission.[13] This branch of the petition must be denied.

 Petitioner next contends that the prosecutor's statement during his summation that petitioner could be found guilty even if Matera fired the fatal shot was so prejudicial as to deprive him of his right to a fair trial. The petitioner had not been charged under the aiding and abetting statute, and defense counsel objected to the prosecutor's reference to this theory on the ground it was a misstatement of the applicable law. The court thereupon instructed the jury that anything counsel, either for the defense or prosecution, said as to the law was to be disregarded by the jury, which was to "take the law solely from the Court and from no one else." The defense, as already noted, rested principally upon the lack of requisite intent to sustain the murder charge. The court geared its instructions to the jury to the indictment charge and to the evidence in the case, and made it patently clear that the defendant could be convicted only on the

---

8. *Cf.* Henry v. Mississippi, 379 U.S. 443, 450, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); United States ex rel. Bruno v. Herold, 408 F.2d 125, 138–41 (2d Cir. 1969) (Waterman, J., dissenting); and see United States ex rel. Schaedel v. Follette, 275 F.Supp. 548 (S.D.N.Y. 1967); United States ex rel. Moore v. Follette, 275 F.Supp. 416 (S.D.N.Y. 1967); United States ex rel. Walker v. Follette, 274 F.Supp. 180 (S.D.N.Y. 1967), aff'd, 405 F.2d 1199 (2d Cir. 1969).

9. N.Y.Code Crim.Proc. § 813–h, subd. 2 (eff. July 16, 1965).

10. *Cf.* Fay v. Noia, 372 U.S. 391, 438–440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938).

11. Compare United States ex rel. Rogers v. Warden of Attica State Prison, 381

F.2d 209, 212–215 (2d Cir. 1967). Accord: United States ex rel. Cunningham v. Follette, 397 F.2d 143, 144 (2d Cir. 1968); United States ex rel. Molloy v. Follette, 391 F.2d 231, 232 (2d Cir.), cert. denied, 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed.2d 658 (1968).

12. *Cf.* Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968) (per curiam); Clewis v. Texas, 386 U.S. 707, 708, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967).

13. *Cf.* Lynumn v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); Watts v. Indiana, 338 U.S. 49, 53, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); Chambers v. Florida, 309 U.S. 227, 238–239, 60 S.Ct. 472, 84 L.Ed. 716 (1940); United States ex rel. Hughes v. McMann, 405 F.2d 773, 776 (2d Cir. 1968).

basis of personal responsibility; no part of the charge made any reference to petitioner's criminal liability as an aider or abetter. So, too, there was no reference to Matera's role in the affair. Furthermore, defense counsel took no exception to this aspect of the court's charge.

The jury's verdict of manslaughter rather than of murder in the first or second degree, and of assault in the third degree, rather than attempted murder or assault in the first or second degree, shows that the jury accepted petitioner's defense of lack of requisite mental state necessary to sustain the more serious charges. That defense was, of course, personal to petitioner and in no way turned on Matera's guilt or innocence; the jury believed it; also, it is clear it disbelieved that Matera rather than petitioner had fired the fatal shot, a point also pressed by his counsel in summation. In the totality of circumstances, it cannot be said that the prosecutor's misstatement was so egregious that it dominated the twelve-day trial, or so prejudiced petitioner's case in the eyes of the jury as to deprive him of his right to a fundamentally fair trial.[14]

The petition is dismissed upon the merits.

14. Chavez v. Dickson, 280 F.2d 727, 735 (9th Cir. 1960); United States ex rel. Santiago v. Follette, 298 F.Supp. 973, 974 (S.D.N.Y. Apr. 18, 1969); United States ex rel. Birch v. Fay, 190 F.Supp. 105, 107 (S.D.N.Y.1961); cf. Buchalter v. New York, 319 U.S. 427, 431, 63 S. Ct. 1129, 87 L.Ed. 1492 (1943).