**UNITED STATES of America ex rel. Louis SAMMARCO, Petitioner,**

v.

**J. E. LaVALLEE, Warden of Clinton Prison, Dannemora, New York, Respondent.**

**68 Civ. 3087.**

United States District Court
S. D. New York.
Oct. 23, 1969.

Louis Sammarco, petitioner pro se.

Louis J. Lefkowitz, Atty. Gen., of New York, New York City, for respondent, Lillian Z. Cohen, Asst. Atty. Gen., of counsel.

McGOHEY, District Judge.

The relator appearing pro se seeks a writ of habeas corpus to secure release from Clinton Prison, Dannemora, New York, where he is serving a sentence of from forty years to life for the crime of second degree murder of which he was convicted by a jury in the former County Court of Bronx County.[1] The sentence was imposed on May 14, 1958, and a notice of appeal was timely filed. Since then, however, despite a long series of proceedings in the state and federal courts, the latest of which was a pro se motion for a writ of error *coram nobis* in the Supreme Court, Bronx County, he has been denied review of his conviction. He claims this has resulted because of his "indigence, ignorance of the law and misinformation of [his assigned] trial counsel" and that thus he has been "denied [his] constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution."[2] His allegation that his state remedies have been exhausted is not disputed by the New York Attorney General. The petition is granted subject to the conditions set forth at the end of the opinion.

The *coram nobis* court assigned Legal Aid counsel and ordered a hearing at which only the relator and one of his trial counsel testified. The District Attorney appeared in opposition but called no witnesses. The following facts are established by the relator's undisputed averments in his petition here, in his *coram nobis* motion papers, the uncontradicted testimony adduced at the hearing and that court's findings. The relator when indicted was indigent and the trial court assigned three attorneys to defend him. After he was sentenced he asked one of them to file a notice of appeal. The attorney did so and in time. He did not, however, proceed to perfect the appeal because he assumed his assignment had terminated with the imposition of sentence.[3] About four months later, on September 29, 1958, the relator moved pro se as a poor person for a free copy of the trial minutes. He did not consult any of his assigned counsel before making that motion and none of them, as far as appears, knew he was filing it. It was submitted to the trial judge (since deceased) who denied it on October 2, 1958, in a memorandum a copy of which is attached to the Attorney General's opposing affidavit here. The memorandum stated that during the trial assigned defense counsel had been supplied daily with a free copy of the minutes, that there was no legal requirement that another free copy be furnished and that

---

1. The indictment on which he was tried charged him with murder in the first degree.

2. Aff. of Poverty in support of the petition for leave to proceed in forma pauperis, par. 5.

3. People v. Kling, 19 A.D.2d 750, 242 N.Y.S.2d 977 (2nd Dept.1963), which so held has been overruled by People v. Callaway, 24 N.Y.2d 127, 299 N.Y.S.2d 154, 247 N.E.2d 128 (1969).

"The defendant's rights in prosecuting his appeal are amply protected by his petitioning the appellate court to review the judgment of conviction against him on the original record, without expense to him." A copy of the memorandum was served by mail on the relator who concededly received it. He did not then or later inform any of his assigned trial counsel that he had made the motion or of the decision thereon. The hearing record leaves it unclear whether he ever asked his trial counsel for the trial minutes. He did not petition the Appellate Division as the trial judge suggested or seek advice as to how he might do so. As far as appears, the Appellate Division was not then aware that he was an indigent appellant without counsel. More than five months later, on March 16, 1959, the Bronx District Attorney filed a motion returnable March 31, 1959, to dismiss the relator's appeal for failure to prosecute. Notice of this motion was given to the attorney who had filed the notice of appeal but not to the relator. He, however, learned of it promptly through a letter dated March 17, 1959, from the notified attorney, enclosing the motion papers and advising him that "In order for you to continue your appeal it will be necessary for you to order the minutes and print the record on appeal. Unless this is done the appeal will be dismissed." The relator may not have realized that this advice was wrong but he knew it was at least inconsistent with what the trial judge had said only a few months earlier; and coming from a court appointed lawyer who was aware of his indigency, the advice understandably left him, a layman, confused. He did not reply to the letter and offered no opposition to the dismissal motion which was granted on April 9, 1959.

At the conclusion of the *coram nobis* hearing, the judge dictated his decision on the record. He said in part: "The Court finds * * * that the defendant Louis Sammarco has proved by a preponderance of the credible evidence that he was denied an appellate review of the judgment entered against him on May 14th, 1958, * * *, by reason of misinformation or erroneous information furnished to him by one of the attorneys who represented him during his trial. This attorney had been assigned by the Court, together with two other counsel, to represent the defendant, but only for trial. * * *. Accordingly, the Court orders that this defendant if he is so advised may now petition the Appellate Division to reinstate his appeal from the judgment entered herein against him * * * *." [4] The relator then moved in the Appellate Division for an order reinstating his appeal. That motion was denied and leave to appeal was denied by the Court of Appeals, undoubtedly for the reason that the Appellate Division order was not appealable. [5] More than a year later, in February 1966, the relator addressed a letter to the *coram nobis* court stating he had been unsuccessful in his efforts to have his appeal reinstated and requesting he "be resentenced Nunc Pro Tunc [sic] so that I may appeal from this judgment." [6] His letter was treated as a motion and denied on the ground that the court was "now without power to resentence defendant nunc pro tunc, as requested. (People v. Adams, 12 N.Y.2d 417, 240 N.Y.S.2d 155, 190 N.E.2d 529)." [7]

■ The relator did not appeal this decision which, with deference, is not supported by the cited case and seems inconsistent with the teaching of People

---

4. The opinion appears in full in the hearing minutes pp. 24–26, a copy of which, together with a copy of the *coram nobis* motion papers, is attached to the Attorney General's affidavit in opposition ɪto the instant petition.

5. See People v. Adams, 12 N.Y.2d 417–421, 240 N.Y.S.2d 155, 158, 190 N.E. 2d 529 (1963); People v. Lampkins, 21

N.Y.2d 138, 142, 286 N.Y.2d 844, 847, 233 N.E.2d 849 (1967).

6. See People v. Hairston, 10 N.Y.2d 92, 217 N.Y.S.2d 77, 176 N.E:2d 90 (1961).

7. Copies of the letter and decision were furnished by the Attorney- General at this court's request and are now part of the record in this proceeding.

v. Hairston, *supra,* which People v. Adams, decided two years later, noted but left undisturbed. This failure to appeal should not, in the circumstances, result in denial of this petition for failure to exhaust state remedies. Neither federal-state comity nor, indeed, common sense would be served by requiring the relator, at this point, to undertake another series of state court appeals in order to settle whether or not the *coram nobis* court had power to resentence him. Resolution of that narrow issue, even if in his favor, would not dispose of the federal constitutional claim he makes here that the state has denied him his Fourteenth Amendment right to "the equal protection of the laws." That claim should be disposed of in this proceeding.[7a]

When the relator was sentenced, section 485(8) of the New York Code of Criminal Procedure provided: "When the judgment is of death or of life imprisonment following a recommendation of a jury * * * the clerk of the court in which the conviction was had shall, within thirty days after a notice of appeal shall be served upon him, cause to be prepared and printed, as required by the general rules of practice, the record and judgment-roll upon which the appeal is to be heard * * * and, after being duly certified by him, cause the same to be filed with the clerk of the court of appeals or with the clerk of the appellate division of the supreme court, as the case may be, * * *." Thus in a case where that provision applied and was obeyed, if the appellant was indigent and without appellate counsel, the certified records would so inform the appellate court and that court would then have the responsibility "to assign appellate counsel for the indigent appellant and to see that he has a free transcript of the record be-

low." [8] That section, however, did not apply to the relator's case because the judgment imposed on him was not one "of death or of life imprisonment following a recommendation of a jury * *." Moreover, when the relator's notice of appeal was filed in Bronx County Court, there was no statutory provision requiring the clerk of that court, when the judgment appealed from was such as was entered here, to file with the Appellate Division "the record and judgment-roll on which the appeal [was] to be heard"; nor was there any rule requiring him to otherwise inform the appellate court of such an appellant's indigence and lack of appellate counsel.[9] Accordingly, he did neither. Later, when the District Attorney moved to dismiss the relator's appeal, he knew or could easily have learned that the Appellate Division had not been furnished the enlightening records and, although he also knew or should have known from the records in his own office that the relator was both indigent and without appellate counsel, he did not so advise the Appellate Division.[10]

The relator's appeal was thus dismissed by a court wholly unaware that he was then indigent and without appellate counsel, first because, in a case such as his, New York had no procedure designed to bring these vital facts known to and recorded in the trial court, to the attention of the appellate court; and second because the prosecutor, when he moved to dismiss, did not present the facts to the latter court, although he could and should have done so.[11] Thus, because of his indigence, the relator was deprived of his right to appeal in violation of the United States Constitution.

The petition for a writ of habeas corpus is granted. The relator may be continued in the respondent's custody, how-

---

7a. See Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967).

8. United States ex rel. Edwards v. Follette, 399 F.2d 298, 299 (2d Cir. 1968).

9. These procedural gaps have since been filled by the 1967 amendment of section 485(8), L.1967, c. 681, § 67, eff. Sept. 1, 1967.

10. Copies of the District Attorney's motion papers have been made part of the record in this proceeding.

11. United States ex rel. Edwards v. Follette, supra; accord, People v. Montgomery, 24 N.Y.2d 130, 133, 299 N.Y.S. 2d 156, 160–161, 247 N.E.2d 130 (1969).

ever, for not more than ninety days at the end of which he shall be released unless New York has granted him the right of full appellate review with the benefit of assigned counsel.

It is so ordered.