**UNITED STATES of America ex rel. Ted L. WILSON, Petitioner,**

v.

**Harold W. FOLLETTE, Warden of Green Haven Prison, Stormville, New York, Respondent.**

**No. 67 Civ. 3388.**

United States District Court, S. D. New York.

July 10, 1970.

Ted L. Wilson, pro se.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for respondent; Brenda Soloff, Asst. Atty. Gen., of counsel.

McGOHEY, District Judge.

The petitioner is serving two concurrent New York State sentences of fifteen to twenty years which were imposed, respectively, in January 1962 by Hon. Mitchell D. Schweitzer in the former Court of General Sessions, New York County, and in March 1962 by Hon. Hyman Barshay in the former County Court of Kings County. In each instance Wilson was charged with robbery in the first degree and in each, having pleaded guilty of robbery in the second degree, was sentenced as a second offender after admitting that in 1955 he had been convicted of a felony in Ohio. Only the New York County conviction is attacked here.[1] The extensive pro se petition states (p. 26): "There are five constitutional issues here: 1. Was petitioner denied the right to a speedy trial? 2. Was petitioner coerced into accepting a plea? 3. Was petitioner capable of acting as own counsel mentally and did counsel appointed by court to assist perform his proper and sworn duty? 4. Was petitioner deprived of counsel at sentence? 5. Was petitioner denied due process of law?" For the reasons that follow the petition is denied.

While the Attorney General has raised no question about exhaustion of state remedies, it is by no means clear that these have been exhausted as to the first issue.[2] The contention implicit in that, however, is so clearly without factual support, as will later appear, that it should be disposed of in this proceeding without remand for further state litigation.[3] Wilson also has an additional federal claim *not* asserted here, as to which some state remedies still may be

[1.] Initially, for that reason, this court dismissed the petition on the authority of McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934) and refused a certificate of probable cause. The petitioner's pro se motion in the Second Circuit Court of Appeals for such a certificate was denied and the matter was remanded for reconsideration in the light of Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) which, after this court's dismissal, overruled McNally.

2. The judgment of conviction and an order entered on Jan. 22, 1965, which denied, after a hearing, a *coram nobis* motion based on substantially the same claims asserted here except the first, were severally affirmed by the Appellate Division, First Department on June 8, 1965. People v. Wilson, 260 N.Y.S.2d 1018. Neither the record nor the briefs on that appeal were produced here and we have not been advised whether the question of trial delay was considered. Also it does not appear whether leave to appeal to the Court of Appeals was sought and denied. The United States Supreme Court denied certiorari, 383 U.S. 930, 86 S.Ct. 939, 15 L.Ed.2d 849 (1966).

3. Roberts v. La Vallee, 389 U.S. 40, 43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967).

available.[4] Nevertheless an evidentiary hearing was held [5] at which Wilson, appearing pro se, testified and examined witnesses.[6]

██ The first issue requires little discussion. Wilson was named in two indictments filed in New York County on December 1, 1960. He was then in custody in Kings County awaiting trial. A mistrial occurred there some time in September 1961 and shortly thereafter, on October 5, 1961, Wilson was arraigned in New York County on its charges.[7] Whether he had earlier notice of these does not appear. He declined the arraigning court's offer to assign counsel and insisted on representing himself which, as the transcript of the proceeding shows, he did with some sophistication.[8] He did not then complain about the time gap between indictment and arraignment and pleaded not guilty to each indictment. He was brought to trial on both before Justice Schweitzer about six weeks later. Meanwhile there had been two adjournments; one on October 19 because of a co-defendant's absence [9] and one on October 26 because of Wilson's, at some proceeding in Kings County.[10] He made no complaint about delay either on October 19 or later when he appeared before Justice Schweitzer. Clearly there was no lack of speed *after* arraignment and the preceding delay was certainly not unreasonable in view of the prosecution during that period, of the earlier filed charges in Kings County. In any event, there is not a shred of evidence that Wilson was in any way prejudiced by it. The first issue, therefore, is answered in the negative.[11]

The remaining issues arise from the proceedings before Justice Schweitzer. Each indictment charged Wilson with a separate armed robbery of the House-

4. Wilson recently made a second *coram nobis* motion in New York County claiming, apparently for the first time, that his Ohio conviction was obtained in violation of his right to counsel. The motion was denied and it has not been shown that all state remedies respecting that claim have been exhausted.

5. United States ex rel. Levy v. McMann, 394 F.2d 402 (2d Cir. 1968); United States ex rel. Sniffen v. Follette, 393 F.2d 726 (2d Cir. 1968).

6. At this court's request a firm of highly competent lawyers consented to represent Wilson. They were relieved by the court after he "dismissed" them because he disapproved their proposed strategy. Legal Aid counsel was then assigned and although Wilson disapproved this also, at the court's direction a highly qualified member of that staff sat with him at the hearing in order to assist and advise him if necessary. Wilson did not consult him.

7. The allegation in the petition (p. 3) that Wilson's trip from Kings County to New York County was "against his will," raises no federal question. The allegation on the same page that he was questioned in the absence of counsel will be considered later.

8. Instant hearing, Resp. Ex. A.

9. Id., Resp. Ex. B.

10. Id., Resp. Ex. C.

11. United States v. Aberson, 419 F.2d 820 (2d Cir. 1970); United States v. Maxwell, 2 Cir., 383 F.2d 437, cert. denied 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856 (1968); United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958).

Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), (May 25, 1970), decided after the instant hearing, does not require a different result. There a Florida judgment of conviction was vacated on the ground that, *to his prejudice*, Dickey had been denied his right to a speedy trial. While confined in Alcatraz under a federal sentence for bank robbery imposed in 1960 shortly after Florida had filed an unrelated armed robbery charge against him, Dickey made repeated demands to be brought to trial on the latter charge. Although "no valid reason for the delay existed," Florida's officials rejected his demands for eight years during which three witnesses potentially helpful to him became unavailable—two of them by death—and possibly relevant police records were either lost or destroyed. Wilson's experience does not even remotely resemble Dickey's.

hold Finance Corporation office at 16 East 42 Street in New York County; one on February 5, 1960, and one on October 7, 1960. The presentation of evidence commenced on November 20, 1961, at which time Wilson had counsel appointed by Justice Schweitzer. The prosecutor in his opening statement told the jury the evidence would show that on February 5, 1960, Wilson, at gun point, had forced Assistant Manager Douglas Brown to open Household's safe from which Wilson then took $4,500; and that Brown immediately recognized Wilson on October 7, 1960, when, having again forced Brown at gun point to open the safe, Wilson took about $4700. Brown was the first prosecution witness. He had just given his name and address when defense counsel requested a recess which was granted. In the jury's absence and after a conference at the bench, Wilson withdrew both of the not guilty pleas he had entered on October 5, 1961, and pleaded guilty of second degree robbery under the first count of the indictment which charged the February 5, 1960 robbery, "to cover all other counts of both indictments." A presentence report was ordered and sentence was adjourned to January 8, 1962.[12] It revealed that Wilson had a history of psychiatric treatment. He was examined on December 26, 1961 by Dr. Emanuel Messinger, Psychiatrist in Charge of the court's psychiatric clinic. His report to Justice Schweitzer dated December 27, 1961 stated that Wilson was "without psychosis at this time" and was not considered "psychiatrically abnormal in a legal sense."[13] Defense counsel did not appear on January 8 and an adjournment was granted by Justice Schweitzer. Later, however, this was cancelled and the sentencing proceeding went forward without defense counsel. Wilson, exercising his right of allocution, said he had "no reason for judgment not being pronounced" and contin-

ued: "Your Honor, I committed the robbery and no promises were made to me when I took the plea from you [sic], but at least when I committed this robbery, I had enough respect of the people, I didn't take anything from them, and there was six women in there and about eight men and I never even tied their hands, or anything.

"The District Attorney here, even told the jury that, and I ask for clemency a little bit for trying to be a gentleman, even though I was a robber." [14]

Wilson claims that although when the guilty plea was entered he said, as he did just before sentence, that no promises had been made to him as to the sentence he would receive, this was not true and that in fact he had been led to believe he would be sentenced to no more than ten years and that a concurrent sentence of the same length would be imposed if he pleaded guilty in Kings County. The transcript of the November 20 proceeding shows that prior to his change of plea, at Justice Schweitzer's suggestion the Kings County prosecutor had arranged that if Wilson pleaded guilty to second degree robbery there his sentence would be both coextensive and concurrent with New York's. That commitment as we now know was kept. The transcript reveals no commitment by Justice Schweitzer as to the sentence he would impose.

These precise claims respecting sentence were the subject of Wilson's first *coram nobis* motion and were rejected by Justice Irwin D. Davidson of the New York Supreme Court after a hearing held on December 16 and 17, 1964. Wilson was represented there by an attorney other than the one assigned by Justice Schweitzer. Besides Wilson, Justice Davidson heard Dr. Messinger, George Sena, Esq., Wilson's counsel before Justice Schweitzer, and the latter Justice Davidson denied the motion for the reasons set forth in an opinion

12. Instant hearing, Resp. Ex. D, proceedings on Nov. 20, 1961, p. 19.

13. Petition, App. B.

14. Instant hearing, Resp. Ex. D, proceedings on Jan. 8, 1962, p. 4.

which having been dictated from the bench, appears in the hearing transcript. The petitioner had a full and fair evidentiary hearing before Justice Davidson whose findings are fully supported by the evidence adduced before him. Nothing to the contrary was introduced at the instant hearing. Accordingly, Justice Davidson's findings are accepted here.[15]

■ The petition alleges (p. 3) that a detective questioned Wilson about the New York County robberies while he was in jail in Kings County and again when he was brought to New York County for arraignment, both times in the absence of his counsel appointed by the Kings County court. He does not complain that anything he said to the detective was improperly received in evidence against him. Indeed he could hardly do so since his guilty plea rendered unnecessary the introduction of any evidence. Instead, he argued here that in opening to the jury the New York prosecutor stated, as indeed he did, that the detective would testify to admissions made to him by Wilson; and that fear of the introduction of such "improperly" obtained damaging evidence was what moved him to change his plea. This obvious afterthought is rejected. If anything other than the hope of leniency which in fact he successfully negotiated "moved" him, it was surely the actual presence of Mr. Brown and the likely presence of many of the other eye-witnesses to the two robberies.[16] In any event, no federal question arises. It is not claimed that Wilson asked for his counsel before talking to the detective or that he was coerced or tricked by him. Neither Escobedo v. Illinois [17] nor Miranda v. Arizona [18] is applicable since Wilson's

trial occurred long before June 22, 1964.[19]

The petition is denied and the writ is dismissed.

So ordered.

---

15. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770.

16. See United States ex rel. Burke v. Mancusi, 425 F.2d 1061 (2d Cir. 1970), decided January 6, 1970.

17. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964).

18. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

19. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).