**UNITED STATES of America ex rel. Milton ELLINGTON, Petitioner,**

v.

**J. P. CONBOY, Superintendent, Great Meadow Correctional Facility, Comstock, New York, Respondent.**

No. 71 Civ. 2743.

United States District Court, S. D. New York.

Oct. 6, 1971.

Milton Ellington, pro se.

GURFEIN, District Judge.

This is a petition *pro se* by a State prisoner for a writ of habeas corpus. Petitioner was convicted of second degree robbery by the New York State Supreme Court and on October 22, 1969 was sentenced to an indeterminate term of imprisonment not to exceed seven years. Assigned counsel handled the appeal to the Appellate Division which affirmed the conviction on February 18, 1971, 318 N.Y.S.2d 668.

Petitioner contends that counsel did not cooperate with him in the preparation of the appeal, that she failed to supply him with a copy of the trial record, that she did not abide by her alleged agreement to consult with him before submitting the brief and that the brief itself was inadequate. Petitioner had received a copy of the brief on October 8, 1970.

After the affirmance by the Appellate Division on February 18, 1971 petitioner wrote a letter dated February 22, 1971 to that court setting forth his dissatisfaction with counsel's performance on the brief. In the letter petitioner moved for permission to file a supplemental brief, to reargue the appeal and to be assigned new counsel. It is not clear that petitioner knew that his conviction had already been affirmed. The motion was set down to be argued on March 9, 1971. On March 11, 1971 petitioner submitted a motion for a free transcript to be used in prosecuting his appeal and in pursuit of collateral relief.

The motion for reargument was denied by order of the Appellate Division on March 18, 1971. The Clerk of the Appellate Division informed petitioner by letter of the same date that petitioner's motion to dismiss assigned counsel was unnecessary because the Appellate Division's order affirming the conviction automatically terminated assignment of counsel. Additionally, the Clerk noted that because the Appellate Division had denied petitioner's motion for reargument, the Appellate Division had no power to direct that petitioner be furnished with a transcript of the trial record.

A subsequent letter dated April 5, 1971 from the Clerk of the Appellate Division informed petitioner that his remedies in that Court had been exhausted.

Application for leave to appeal from the Appellate Division's affirmance was made to the New York Court of Appeals by petitioner's same assigned counsel despite his efforts to dismiss her and despite the statement of the Appellate Division Clerk that her assignment had

been automatically terminated. On March 25, 1971 Chief Judge Fuld denied leave to appeal. Petitioner has not sought relief in the State Courts by writ of error coram nobis or in any collateral proceeding. A petition to the Supreme Court for a writ of certiorari was not filed. Petitioner's communications with the Appellate Division constitute the whole of his efforts in the State Courts to raise the issues of counsel's incompetence and petitioner's right to a free transcript. Petitioner now brings a petition for a writ of habeas corpus.

In this petition he contends (1) that he was not warned of his rights before he gave an inculpatory statement and that the statement was erroneously admitted at his trial, claiming that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) applied to him because, even if he was not in custody, he was a known suspect; (2) that the eye-witness identification of himself was constitutionally improper under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); (3) that denying him a free transcript of his trial violated his constitutional rights; and (4) that his assigned counsel argued his *Miranda* point in the Appellate Division in an inadequate manner and failed to raise the *Wade* problem as a constitutional issue.

## EXHAUSTION OF REMEDIES

28 U.S.C. § 2254(b) requires that an application for a writ of habeas corpus shall not be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State. * * *" Subsection (c) of § 2254 provides that there is no exhaustion of remedies if the applicant "has the right under the law of the State to raise, by any available procedure, the question presented."

■ To exhaust his remedies in the State Courts petitioner need only raise the issue and pursue it to a conclusion in the highest State Court either by appeal from the conviction or from denial of collateral relief. There is no need to

petition the United States Supreme Court for a writ of certiorari. Fay v. Noia, 372 U.S. 391, 435–438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The issues presented by this petition and their status with respect to exhaustion of State remedies are as follows:

■ 1. The *Miranda* claim was raised at a People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) hearing and decided against the petitioner. The issue was raised again on appeal to the Appellate Division. The issue was presented to the Court of Appeals by way of the petitioner's Appellate Division brief which went to the Court of Appeals as part of assigned counsel's application for leave to appeal. Having gone to the highest State Court on this issue, the petitioner has exhausted his State remedies. The issue is properly before the Federal Court.

■ 2. The *Wade* claim was raised at an identification hearing in the New York Supreme Court and decided against the petitioner. His counsel in her brief to the Appellate Division failed to raise the out-of-court identification as a constitutional issue under *Wade*, although she did argue that the identification was too weak to support a conviction beyond a reasonable doubt. Although the petitioner did fail to exhaust his State remedy by direct appeal this failure was, he contends, the fault of his "inadequate" counsel. The requirement of exhaustion of remedies is based upon the belief that the State Courts should have an opportunity to pass upon Federal constitutional questions before Federal District Courts assume jurisdiction. Whether his counsel was adequate or not, the State Court has had no opportunity by way of direct appeal or coram nobis to pass on the *Wade* question.

If the *Wade* question were the sole question on an application for a Federal writ of habeas corpus, this Court would have remanded for a State coram nobis determination. But since the *Miranda* issue is here quite properly this Court will also, as a matter of discretion, take cognizance of *Wade* to eliminate further time consuming action by State and Federal Judges. See Roberts v. La-Vallee, 389 U.S. 40, 42–43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); United States ex rel. Wilson v. Follette, 316 F.Supp. 178, 179–180 (S.D.N.Y.1970); United States ex rel. Di Niro v. Mancusi, 298 F.Supp. 1294, 1295 n. 2 (S.D.N.Y.1969).

■■ 3. Petitioner first raised the issue of the free transcript by making a motion in the Appellate Division after that Court had affirmed his conviction. He requested a free transcript in order to facilitate direct appeal and to seek collateral remedies. Petitioner did not exhaust his State remedies with respect to the free transcript and he is not in a position to claim that he has been deprived of any constitutional right. On his appeal his counsel did have a transcript. New York provides one free transcript (N.Y.Code Crim.Proc. § 456(2), McKinney Supp.1970) which his counsel received. Petitioner's argument is that he was entitled to two copies, one for counsel and one for himself. The New York Courts reject that view. See People v. Preston, 22 A.D.2d 708, 253 N.Y.S.2d 797 (2d Dept. 1964). So apparently did the Supreme Court with respect to a similar California practice. See Wade v. Wilson, 396 U.S. 282, 286, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970). With respect to collateral attack, as distinguished from appeal, there is no showing that before making his application for a writ of habeas corpus petitioner sought to obtain a transcript for that purpose in the State Court. In Wade v. Wilson, *supra,* the Supreme Court noted that there was no constitutional question until the petitioner in habeas corpus could, at least, affirmatively show that the State had refused him a transcript for habeas corpus purposes (396 U.S. at 286–287, 90 S.Ct. 501, 24 L.Ed.2d 470). The Supreme Court has not yet said whether the problem would attain a constitutional dimension if New York now refuses a transcript. It teaches us that on the present record

"the District Court should not have reached the merits of petitioner's claim" (*id.* at 287, 90 S.Ct. at 504).

4. The issue of competency of counsel was first raised by petitioner in his letter to the Appellate Division. Before that letter reached the Court, petitioner's conviction had been affirmed. By letter of March 18 the Clerk of the Appellate Division advised petitioner that assignment of counsel was terminated by affirmance of the conviction. Nevertheless, assigned counsel proceeded to petition the Court of Appeals for leave to appeal, which was denied on March 25.

■■ As to the incompetency claim, the State courts have never passed on the petitioner's allegations. Research has uncovered no case where a prisoner asserts, after affirmance of his conviction, that his counsel *on the appeal* was incompetent. The New York Court of Appeals in People v. Lampkins, 21 N.Y. 2d 138, 286 N.Y.S.2d 844, 233 N.E.2d 849 (1967), indicated that coram nobis is the appropriate remedy where the right to appeal is frustrated by counsel's incompetency—as where the appeal was dismissed. Unlike the situation in *Lampkins,* petitioner's appeal was heard. But coram nobis may still be available to him upon an allegation of facts showing that representation by appointed counsel was a "mockery of justice." People v. Brown, 7 N.Y.2d 359, 197 N.Y.S.2d 705, 165 N.E.2d 557 (1960), cert. denied, 365 U.S. 821, 81 S.Ct. 703, 5 L.Ed.2d 698 (1961); People v. Tomaselli, 7 N.Y.2d 350, 197 N.Y.S.2d 697, 165 N.E.2d 551 (1960). Whatever the likelihood of petitioner's success in petitioning for a writ of error coram nobis on this issue, the State courts have a clear interest in passing on matters of this kind. The petitioner must first make his claim in the State Court.

■ As to the Appellate Division's failure to substitute new counsel for petitioner's appointed counsel, if what petitioner describes is a deprivation of the right to counsel, the remedy is coram

nobis in the State court. Hogan v. Culkin, 18 N.Y.2d 330, 332 n. 1, 274 N. Y.S.2d 881, 221 N.E.2d 546 (1966); People ex rel. Sedlak v. Foster, 299 N.Y. 291, 294, 86 N.E.2d 752 (1949).

## THE MIRANDA ISSUE

We now turn to the *Miranda* issue with respect to which there has been exhaustion of State remedy.

Petitioner was standing in the midst of a group of persons in the lobby of one of the buildings in a housing project in which he resided. He was seen by a policeman Eversly, who had been told that petitioner was suspected of aiding in the robbery of a restaurant, The Twin Donut Shop. Eversly and another patrolman approached petitioner and asked him whether his name was Milton Ellington. Ellington answered "yes." Patrolman Eversly then said to petitioner, "You took off the Twin Donut." Ellington said, "Oh, I thought they forgot all about it. I've been walking around there for the last four or five days." The patrolman then asked the petitioner to accompany him to his office. No guns were drawn. Eversly conceded, however, that the petitioner could not have walked away from him. Two persons were then brought to Patrolman Eversly's office to view the petitioner, and the petitioner was thereafter formally arrested by Eversly who informed him of his rights. On the way to the precinct station petitioner said, "Maybe this is the best thing that could have happened to me. I need treatment."

■ Both statements were admitted in evidence. The petitioner claims that his constitutional rights were violated under the doctrine of Miranda v. Arizona, *supra* and under the requirements of statutory law, N.Y.Code Crim.Proc. §§ 177, 180 (McKinney Supp.1970). The sections he refers to deal with the lawfulness of arrest and not with warnings to suspects. "In any event, noncompliance with a state rule is not, in and of itself, a violation of one's federally protected rights." United States ex rel.

Coffey v. Fay, 242 F.Supp. 382, 385 (S. D.N.Y.1965).

The constitutional issue is not whether there was compliance with the State's Criminal Code but whether there was a violation of the petitioner's constitutional right against compulsory self-incrimination. The State contends that when the petitioner made the first statement he was not yet in custody and when he made the second statement he had already been warned. The Supreme Court noted in *Miranda* that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding. * * *" (384 U.S. at 478, 86 S. Ct. at 1630).

█ As the Court of Appeals for the Ninth Circuit said in Arnold v. United States, 382 F.2d 4, 7 n. 3 (1967): "Neither *Escobedo*, 378 U.S. at 492 [84 S.Ct. 1758, 12 L.Ed. 977] * * * nor Miranda v. State of Arizona, 384 U.S. 436, 477–478 [86 S.Ct. 1602, 16 L.Ed.2d 694] * * * (1966) applies to on-the-scene questioning before the process has shifted from the investigatory to the accusatory stage." And our own Circuit has said: "The purpose of the *Miranda* requirement is to protect a suspect, detained by the police, from coercion effected by the police to compel the suspect to make inculpatory admissions or confessions. * * * It is only when inculpatory statements are made in a context in which rationality and free choice are likely to be overborne by the Government's investigatory or prosecutorial agents or authority that *Miranda* comes into play." United States v. Viviano, 437 F.2d 295, 300–301 (2 Cir. 1971).

It is true that the Supreme Court has held that interrogation may be custodial even outside the stationhouse. Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). In *Orozco* the petitioner was questioned by four police officers in his bedroom. He "was not free to go where he pleased but was 'under arrest.'" *Id.* at 325, 89 S.Ct. at 1096. But this Circuit has interpreted the

*Orozco* decision to mean "that *something* more than official interrogation must be shown. It is hard to suppose that suspicion alone was thought to constitute that something. * * *" United States v. Hall, 421 F.2d 540, 544 (2 Cir. 1969) (Friendly, J.), cert. denied, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970).

█ The unexpressed intention of police officers to arrest him, not known to the defendant, does not amount to detention. Williams v. United States, 381 F.2d 20, 22 (9 Cir. 1967). Moreover, Judge Friendly in *Hall* cited the New York Court of Appeals ruling in People v. P., 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255 (1967) with approval. In that case the defendant was a 16 year old boy who, while standing by the side of his house with two other boys, was approached and questioned by a detective. The detective was acting on the statement of another youth—who had been arrested—that the defendant was an accomplice to a crime. The two boys were asked by the detective to leave and did so. The defendant was not told he was under arrest. No gun was drawn and the defendant was not restrained. The New York Court of Appeals held that such questioning "is little different from routine police investigation of crime or suspicious conduct at a person's home, his place of business or on the street—the kind of questioning which has uniformly been held not to require the *Miranda* warnings." 21 N.Y.2d at 10–11, 286 N.Y.S.2d at 233, 233 N.E.2d at 261 (citations omitted).

█ In sum, the petitioner made an inculpatory statement which, even if deemed a response to interrogation, would not be a response to an "in custody" interrogation. The only doubt remaining is whether Patrolman Eversly's statement "You took off the Twin Donut" was an accusation which, if believed by Eversly, actually expressed his intention to arrest the petitioner. If enough time elapses between the accusation and the response for the *Miranda* warnings to be given, perhaps, in some circum-

stances, it should be given, although the additional test would still be an awareness by the defendant that he is not free to leave. Here the spontaneous exclamation followed immediately upon the accusation. There is no rule that requires a police officer, before an arrest has been made, to couple a statement that the defendant is suspect with a warning to make no spontaneous comment.

■■■ We have read the brief to the Appellate Division of which complaint is made. We think that his counsel quite competently asked the Appellate Division to rule that the *Miranda* requirement applied not only to "in custody" situations but also to situations where the defendant was a suspect in a known crime.[1] The State Court refused to so hold. This Court agrees. In any event, there was no interrogation here but an accusation which elicited a spontaneous non-responsive admission that the police officer had not requested the petitioner to make.

### THE WADE ISSUE

In response to motions by petitioner and his co-defendant to suppress in-court identifications, the State Court held a pre-trial identification (*Wade*) hearing on August 8, 1969. The sole witness at that hearing was Soula Paikopoulos, a counter-woman employed at the Twin Donut Shop where the robbery occurred. She identified petitioner and his co-defendant at the hearing and testified that in the early morning of January 4, 1969 the two men were in the shop from about 12:30 a. m. until 5 a. m. They ordered food and refused to pay, but Miss Paikopoulos was afraid of them and made no effort to remove them or to call the police. The shop was well-lit and the men sat at the only counter. Miss Paikopoulos was the only waitress and so was able to observe them continually during their four and one-half hour stay. At about 5:25 a. m. the two men

reappeared. Petitioner took money from the register and from a cardboard box below the register, while his co-defendant held Miss Paikopoulos at gunpoint.

Immediately after the robbery Miss Paikopoulos described the men to the police. She said they were about 17 or 18 years old, that one was white and one black. The papers before this Court do not indicate what further description, if any, she made of the black man. Petitioner, who is black, was 19 years old at the time of the hearing.

Miss Paikopoulos saw petitioner and his co-defendant next at his arraignment on January 10, 1969. She sat in the first row of the courtroom with the arresting officer. The officer asked her if they were the two men, and she told him they were. The substance of the *Wade* claim is that Miss Paikopoulos' in-court identification was thereby infected.

■■■ The petitioner was granted a full and fair hearing by the State Court (Mr. Justice Fraiman) resulting in reliable findings. In such case the Federal District Court should accept the facts as found in the hearing. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The salient fact found by Mr. Justice Fraiman was that the eye witness who made the identification at the *Wade* hearing had had four and one-half hours in a well lighted restaurant to observe the petitioner both before and during the commission of the crime. He specifically found "that the in-court identification (at the *Wade* hearing) was not based on or tainted by the pre-trial identification." While the informal identification was wrong under *Wade* standards, United States v. Roth, 430 F.2d 1137, 1140–1141 (2 Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971), there is no indication whatever that the State Court Judge failed to adhere to recognized constitutional principles in finding the in-court identification untainted. This was

---

1. We adopt the test suggested by Judge Fuld in People v. Tomaselli, 7 N.Y.2d 350, 356, 197 N.Y.S.2d 697, 702, 165 N.E. 2d 551, 555 (1960): "[T]here is denial of effective representation of counsel only when the representation given is so patently lacking in competence or adequacy that it becomes the duty of the court to be aware of it and correct it."

not the case of a robber who leaped out of the shadows to confront a victim who had never seen him before. The witness had known the defendant earlier and even knew his first name. This made the identification air-tight. *Wade* cannot be stretched to unreal limits where "the in-court identifications had an independent origin." See *Wade*, 388 U.S. at 242, 87 S.Ct. 1926, 18 L.Ed.2d 1149. And while it might have been better for the petitioner's counsel squarely to have raised the *Wade* point in the Appellate Division, the chances of her success would have been meager indeed.

In any event, the petitioner did have a full and fair hearing in the State Court with the assistance of counsel. There is no serious dispute on the facts and the State Court did make careful findings, within the limits of constitutional doctrine, with which this Court upon independent review of the *Wade* hearing transcript agrees. 28 U.S.C. § 2254(d).

The petitioner has, however, raised questions of some substance. In order that he may take an appeal from this decision, the Court will issue a certificate of probable cause pursuant to 28 U.S.C. § 2253 and Fed.R.App.P. 22(b).

The petition is dismissed.