STATE OF CONNECTICUT *v.* JACOB SCHAFER

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 17-5828

Argued March 24—decided June 13, 1969

*John P. McKeon,* of Hartford, for the appellant (defendant).

*Dennis F. Gaffney,* assistant chief prosecuting attorney, for the appellee (state).

DiCenzo, J. The information charged the defendant with violation of General Statutes § 53-295, entitled "Pool Selling." No bill of particulars was sought, and no objection was made to going forward with the trial without further specification of the particular part or section of the statute relied on by the state. After a trial to the jury, the defendant was found guilty and has appealed from the judgment.

Under the provisions of § 53-295, it is unlawful, inter alia, to maintain or occupy any place with apparatus, books or any device for the purpose of registering bets or wagers on the result of any trial or contest of skill, game, race or endurance of man, beast, bird or machine. This includes horse races and ball games. *State* v. *Rich,* 129 Conn. 537, 540.

On December 22, 1966, pursuant to § 54-33f of the General Statutes, the defendant filed a motion to suppress evidence allegedly obtained illegally and for the return of property so obtained on the ground that (1) the property was seized by a search warrant which was insufficient on its face; (2) there was not probable cause for believing the existence of the grounds on which the warrant was issued; (3) the warrant was illegally executed and/or issued; and (4) the search and the seizure of the property were accomplished by an invalid search warrant and in violation of the defendant's rights under the fourth amendment to the federal constitution and under article first, § 7, of the Connecticut constitution. See General Statutes § 54-33a.

The motion to suppress was denied *(Ciano, J.).* The defendant attacks the denial of the motion to suppress. The search and seizure warrant was issued for the search of the defendant, his residence and two automobiles used by him but registered in the name of Beverly Schafer. The affidavit contained allegations that the defendant was violating § 53-295 of the General Statutes; that the police officers had confidential information from a reliable informant; and that the usual pattern of pool-selling activity was observed. A trooper stated in the affidavit that the informant observed the defendant pick up horse race bets from a convicted gambler. The informant was present when telephone calls were placed with the defendant's telephone number and horse race bets were placed. The conduct of the defendant during the usual time for placing wagers was described, together with his associations during that time. The affidavit in the instant case is clearly distinguishable from the affidavit discussed in *Spinelli* v. *United States,* 393 U.S. 410, in that it sets forth several of the underlying circumstances, reasons for the reliability of the informants, actual betting transactions by known convicted gamblers, both by telephone and in person, and personal observations of the conduct of the defendant by the affiants at the places and times supplied by the informants. The affidavit also sets forth that the defendant was a multiconvicted bookmaker and was observed by the affiants, in a surveillance spreading over four days, to be always at home during the so-called betting hours. In *Spinelli,* supra, the affidavit was found to be insufficient for several reasons: (1) There was no support for the affiant's conclusions that the informant was reliable; (2) the informant did not provide a sufficient statement of the underlying circumstance; (3) there were no allegations that the informant personally observed the defend-

ant in any betting action or ever placed a bet with him. In the instant case, the affidavit did disclose that there was probable cause to believe that the defendant was in the business of pool selling and clearly justified the issuance of the search warrant. See *Aguilar* v. *Texas,* 378 U.S. 108, 114; *Henry* v. *United States,* 361 U.S. 98; *Johnson* v. *United States,* 333 U.S. 10, 14; *Dumbra* v. *United States,* 268 U.S. 435, 441; *State* v. *Wilson,* 153 Conn. 39. This assignment of error is without merit.

As to the court's refusal to quash the information on the ground that the pool-selling statute is unconstitutional, we do not consider this assignment, since during oral argument the defendant stated that he would not pursue this claim.

There are twenty-two assignments of error, and for purposes of clarity we will discuss them as nearly as possible in the order in which they are claimed to have occurred at the trial and not in the numerical order in which they appear in the defendant's assignment of errors.

As soon as the court stated that it was ready to proceed with the trial, the defendant moved that the courtroom be cleared and that the presiding judge disqualify himself. The defendant offered as a basis for his motion that some fifteen years prior the presiding judge was a member of the United States parole board and as such had then ruled adversely to the defendant's request for parole. The defendant further asserted, in support of one motion, that he had expressed himself as the result of the United States parole board ruling and that some of his words may well have reached the ears of the trial court, developing animosity. The court denied the motion, stating that there was "no memory in my mind that could, in any way, make me act illegally or improperly in this case." Earlier, the court had

pointed out that this was a jury case. Exception was noted by the defendant, and he assigns error in the court's denial of the motion.

Section 51-39 of the General Statutes sets forth the statutory reasons for a judge's disqualification. The defendant does not claim that there were statutory disabilities in this case, and there do not appear to have been any. A very similar situation was disposed of in *State* v. *Kohlfuss,* 152 Conn. 625. In that case, the sentence review division had heard the defendant's application for review of his sentence. After the hearing, the review division increased the sentence from two to three years. After being arrested for a subsequent crime while on parole, the defendant was finally presented for trial before a judge who had been one of the three members of the review division when the defendant's sentence was increased. Even though, in *Kohlfuss,* no timely claim was made that the trial judge should disqualify himself, the Supreme Court pointed out (p. 629): "In the first place, in a consideration of this claim of disqualification, it should be noted that the sentence review division has nothing to do with the ascertainment of guilt or innocence. Its powers are limited to a review of the sentence imposed." The common-law rule is that no judge should preside in a case in which he is not wholly free, disinterested, impartial, and independent, and in general the rule of disqualification should not have a narrow or technical construction but rather should be broadly applied in all cases where a judge is called to act judicially or to decide between conflicting rights; and no judge should try a case in which there is any substantial ground on which to base a claim of disqualification. 48 C.J.S., Judges, § 72. In the instant case, there was no statutory nor any other substantial ground for disqualification of the trial judge.

The defendant's attacks on the conduct of the trial judge throughout the trial are set forth in assignments of error. Prejudice and unfairness are the keynotes of the attacks on the trial judge. "An assignment of this nature is one not lightly to be made or summarily to be disposed of. Because of the gravity of the accusation, which strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary, we have examined the record with infinite care, in fairness and justice both to a litigant in the case at bar and to a member of the bench of this state." *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501. We have done no less in the instant case.

We view part III of the defendant's brief as an unwarranted attack on a judge of this state.[1] There is ample authority for striking the defendant's brief in its entirety and on the court's own motion. Note, 111 A.L.R. 879, 882–84. In the interests of justice and dispatch, however, we order part III only of the defendant's brief stricken from the files of this case.

[1] The scandalous and deplorable language chosen and the animadversions upon the trial court are unwarranted and indefensible. It is our duty to keep the files and records of this court free from scandalous matters, and especially so when such matters are not basically connected with the merits of the case. In *Green* v. *Elbert,* 137 U.S. 615, 624, Mr. Chief Justice Fuller, speaking for the court, said: "The printed argument of plaintiff in error contains many allegations wholly aside from the charges made in his complaint, and bearing reproachfully upon the moral character of individuals, which are clearly impertinent and scandalous, and unfit to be submitted to the court." In *Royal Arcanum* v. *Green,* 237 U.S. 531, 546, Mr. Chief Justice White, speaking for the court, said: "The printed argument for the defendant in error is so full of vituperative, unwarranted and impertinent expressions as to opposing counsel that we feel we cannot, having due regard to the respect we entertain for the profession, permit the brief to pass unrebuked or to remain upon our files and thus preserve the evidence of the forgetfulness by one of the members of this bar of his obvious duty. . . . Following the precedent established in *Green* v. *Elbert,* 137 U.S. 615, which we hope we may not again have occasion to apply, the brief of the defendant in

Returning to the assignments of error attacking the conduct of the court at the trial, we examine them individually. The defendant claims that the comment of the trial court, "You can mark me for identification for that matter. You can mark anybody for identification," was a "flippant rejoinder." We are of the opinion that this was the court's manner of stating the rule that there is no discretion in the court in marking exhibits for identification. In *Duncan* v. *McTiernan,* 151 Conn. 469, 470, our Supreme Court said: "It was manifest error for the court to refuse to permit the documents to be marked as exhibits for identification. The court had no discretion to refuse such a request, because to allow such discretion would permit a trial judge to deprive an aggrieved party of a proper record for an appeal."

The defendant attacks the following admonition of the court to both counsel: "I think the time has come when I must state my position. If I detect— I'm referring to both sides. If I detect any effort to create a situation where there will be a mistrial, I'm going to indulge in examining the conduct of the lawyers and if it's within the lawyer's realm to know

error is ordered to be stricken from the files . . . ." In Connecticut, as early as 1787, in *Lankton* v. *Scott,* Kirby 356, scandalous matter contained in documents filed with the court was recognized and declared to be ground for abatement. In *Pradlik* v. *State,* 131 Conn. 682, 683 n.1, the court declined to receive a brief from a professor of the Yale Law School: "The brief of the amicus curiae was, in the study of the case, found to contain unwarranted aspersions upon the good faith and fair dealing of the state's attorney in the prosecution of the original case against the plaintiff and in connection with the present proceeding, and, to a less extent, aspersions upon the trial court. It was, therefore, ordered that the brief be stricken from the files." "A brief in no case can be used as a vehicle for the conveyance of hatred, contempt, insult, disrespect or professional discourtesy of any nature for the court of review, trial judge, or opposing counsel; invectives are not argument, and have no place in legal discussion, but tend only to produce prejudice and discord." 5 C.J.S. 347, Appeal and Error, § 1327, and cases cited.

that he should not have done something that created the mistrial, I will resort to statutory contempt proceedings, if I have to declare a mistrial. I'm stating this for the benefit of both sides." The defendant claims that this was a threat of contempt proceedings to deter defense counsel from any further questioning and therefore the court was destroying the presentation of the defendant's case. It is to be noted that these expressions were made by the court in the absence of the jury and were in fact directed to both counsel for the state and counsel for the defendant. Considering the history of this case, the number of objections of both counsel, the repeated requests that the trial court disqualify itself and the wrangling of counsel, as appears from the evidence, we are of the opinion that the trial court was well within its duty and responsibility to attain an orderly progress of the trial.

The defendant attacks the comments of the court during the following testimony: "Mr. McKeon, in cross-examination of Lieutenant Page: Q.—You mean after you're told that the person who is allegedly going to take your bet is not available, you then give the bet to the person who is talking and gives you this story? A.—That's right. Q.—Then you would have us believe that this is a standard procedure based on your long experience as an expert? Mr. McDonald: I'll object to the phrase. The court: Sustained. Mr. McKeon: May I know the grounds, Your Honor? The court: Commonsense grounds. You're twisting the facts. Mr. McKeon: May I know the exact fact I twisted, Your Honor? The court: I've told you, you're twisting the facts and you should know."

We feel that this was this court's manner of stating the rule that in cross-examination it is improper to misquote evidence. There was nothing in the testi-

mony of the expert officer concerning standard procedures, and when the defendant's counsel asked the court for the grounds on which the court sustained the objection, the court set forth in its own way that the question included facts not in evidence. The exclusion of such a question was within the discretion of the court. "Whether an expert should be permitted to state his opinion upon the testimony as he heard it given in the courtroom, or whether all the facts embraced in the evidence should be incorporated in the question lies within the discretion of the trial court." Holden & Daly, Conn. Evidence § 118, p. 551, and cases cited. Our view is that the court was well within its discretion in the ruling.

The defendant attacks the trial court's comments at a point in the direct examination of Attorney Pearl. Pearl had been testifying to his presence in the home of the defendant at the time of the search and that the defendant had told him he was in the art business. The following occurred: "Mr. McKeon: Q.—How many paintings did you notice on the premises, and where did you see them? A.—Well, starting in the garage where his vehicle was, there were I think, four in the back of his car. This was one—There were four in his car that he pointed out to me. In the garage itself were what, as I say, I think were lithographs. I'm not really sure about that. Q.—How many, sir? A.—There was a pile. This is the old—you know—the old story. I don't know what's underneath the first one. Q.—Yes? A.—I think they were lithographs. Q.—Right. A.—I just don't remember. Inside the house I remember, to the exclusion of everything else, the one picture that I had seen—that was—— Mr. McDonald: Well, I'm going to object to this 'one picture.' I don't see how this is relevant. Mr. McKeon: I asked him if—what he noticed in the way of paintings in the house. It's responsive, Your

Honor, it's relevant. The court: I doubt not to this extent. Why all this dress-up and all that? Mr. McKeon: I don't understand that expression, Your Honor. The court: Well, why all the verbiage, and he's interested in objects of art and pictures?"

Even if we were to concede that it was error for the court to exclude the question and make the remark, which we do not, it could not be reversible error. This was another attempt by the court to keep this heated contest within orderly bounds. "Not every departure from the norm, however, is reversible error." *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 502. It does not appear that the defendant was prejudiced by the court's remarks.

Two assignments of error are directed to the failure of the trial court to declare a mistrial during several periods of the trial. One assignment claims that the court erred in allowing the prosecutor to argue that the premises were searched under a search warrant from the Circuit Court and therefore a motion to declare a mistrial should have been granted. During the course of the state's closing argument, after the defendant had argued, the state for the first time in its argument to the jury raised the fact that the police entered the defendant's home pursuant to a search warrant. The defendant claims that this was improper and was not cured by a proper instruction from the court to the jury. The substance of the prosecutor's argument to the jury was that the search of the defendant's house, person and car was the result of a court search warrant and not because of animosity or spite. The statement of the prosecutor was not to the effect that there was probable cause to conduct a search. Inasmuch as evidence had been introduced at the start of the trial that a search warrant had been authorized, it does not appear that the argument of the prosecu-

tor was so prejudicial as to cloud the presumption of innocence, as claimed by the defendant. This is especially so in view of the court's general instruction that "the law presumes an accused person innocent unless and until his guilt is established by the evidence." And again, later, the court instructed the jury: "When the presumption of innocence is overcome or removed by evidence proving beyond a reasonable doubt that the accused person is guilty of the crime charged, then . . . ." The cases cited by the defendant in support of this claim of error are not analogous. *Schotis* v. *North Coast Stevedoring Co.*, 163 Wash. 305, an action against a Japanese corporation in which some of the witnesses for the defense were Japanese, involved (p. 315) repeated appeals to racial and religious prejudices by the plaintiff's counsel in addressing the jury, appeals which were continued after objection and after cautioning by the court and referred to the Japanese as nonbelievers in God, before whom they had sworn to tell the truth, and as people who do not like, and are disliked by, citizens of the United States. The court held this to be prejudicial error. Also not analogous is *Mudrick* v. *Market Street Ry. Co.*, 11 Cal. 2d 724, 737, in which it was held that the making by counsel for the plaintiff of statements, in opening the case to the jury, which he did not attempt to prove and knew could not be proved was not prejudicial error where the trial court instructed the jury that there was no evidence to support counsel's statements.

The other assignment of error directed to the court's failure to declare a mistrial was not pursued in the defendant's brief and is considered abandoned. *Bridgeport Hydraulic Co.* v. *Stratford*, 139 Conn. 388, 390; Maltbie, Conn. App. Proc. § 327.

An assignment of error is directed to the admission into evidence of an opinion by Detective

McDonnell, who, testifying as an expert witness, was asked by the prosecuting attorney to interpret the markings on charred papers seized from the Schafer living room fireplace and preserved and entered as exhibits at trial. "Mr. McDonald: And do these figure amounts have any significance to you? A.—Yes, in my opinion they would be dollar amounts. They would be either owed to the bookmaker or owed by the bookmaker. And the bookmaker has done some bookkeeping, worked over these figures and made a check of the ones he's computed and the words 'entered' would indicate to me that this information has been transferred to some other book or paper, some other record. Q.—What would that other record be called? A.—That would be his final tally sheet. Q.—Similar to the tally sheets already in evidence testified to? A.—Could be. Mr. McKeon: Well, Your Honor, I move that that go out—'could be'—that's speculation."

It is conceded that the witness was testifying as an expert. The ruling was within the discretion of the trial court. "The judge at the trial is in so much better position than an appellate court to determine when a witness should be permitted to give opinion evidence that his rulings should be accepted save in the most exceptional circumstances." Model Code of Evidence rule 401, comment c. "[T]he standard actually applied by the trial judges of today approaches more nearly the principle espoused by Wigmore, namely that the opinion should be rejected only when it is superfluous in the sense that it will be of no value to the jury." McCormick, Evidence, p. 23; see *Stephanofsky* v. *Hill,* 136 Conn. 379, 385. The court did not abuse its discretion.

An assignment of error is directed to an alleged misinterpretation by the court of alleged impeaching

evidence. In cross-examination of Detective McDonnell, a witness for the state, the defendant had offered the witness' original notes of what had transpired at the Schafer home. While the defendant was cross-examining from these notes, the following ensued: "The court: I mean let's make some sense out of this. You're offering his notes. Mr. McKeon: Yes, Your Honor. The court: You're bound by those? Mr. McKeon: Well, Your Honor, I'm offering to impeach the credibility by the weight. I'm not bound by them at all, Your Honor. And, Your Honor, I would ask that that statement of law be immediately cleared up with the jury. I say it's highly prejudicial. I'm not bound by anything this man says. I claim prejudice from the court's remarks. The court: Might the jury be excused until 2:00."

"The omission of a form, or the transgression of a rule . . . in the course of a trial, of such a nature that no harm therefrom to the parties is possible, cannot render the result unjust." *State* v. *Brockhaus*, 72 Conn. 109, 113. "[N]one save fundamental and substantial errors which may do a litigant injustice can or ought to furnish ground for disturbing a judgment rendered in substantial accord with the principles of law." *Turgeon* v. *Woodward*, 83 Conn. 537, 547. "If our jury system is to continue to be a practical and working one, and productive of reasonably satisfactory results, it must be given a chance to operate within human limitations as respects both judge and jury, and have reasonable presumptions applied to its operation. Substantial errors will be committed for which a remedy must be given, but an appellate court ought not to be expected to create substance out of shadows, to conjure up errors out of trifles, or to seek for judicial irregularity by microscopic processes, speculative imaginings, or refined reasoning." *Foote* v. *Brown,* 81

Conn. 218, 227; see Maltbie, Conn. App. Proc. §§ 20–36. The defendant was not harmed by the court's ruling.

An assignment of error refers to the defendant's claim that the court erred in failing to reprimand the prosecutor for claimed improper argument. The court admonished both counsel. The prosecutor's references to a motion to suppress were harmless. Another assignment of error attacks the order of the trial court, over objections, that $853 be deposited with the state during the pendency of this appeal. This assignment has not been briefed and is considered abandoned.

Assignments of error also deal with the court's charge or failure to charge as requested. The defendant requested the court to charge the jury on the doctrine of falsus in uno, falsus in omnibus. The court did not do so. However, it carefully instructed the jury on the credibility of witnesses, including the truthfulness of testimony, motives, bias, prejudice and interest or lack of interest in the outcome of the trial. As stated in *Miles* v. *Sherman,* 116 Conn. 678, 683, "We would not ordinarily predicate error upon the failure to instruct specifically that if the jury found a witness had testified falsely upon one subject, it was within their province to disregard any or all of his testimony in accordance with the maxim, *falsus in uno, falsus in omnibus.* *Kornblau* v. *McDermant,* 90 Conn. 624, 636 . . . . The rule at best is but an application of one of the considerations in everyday use when men are called upon to test the sincerity and honesty of their fellows, and one which the jury would, if they deemed the circumstances warranted it, naturally apply in any event; its statement at most merely calls attention to one circumstance which may, but does not necessarily, determine the credibility of a

witness." The reasoning of the *Miles* court is in conformity with the prevailing attitude of all courts. The maxim is treated with tolerance and sufferance, laboring under faint praise and being generally regarded as of little assistance to juries. *Virginian Ry. Co.* v. *Armentrout,* 166 F.2d 400; note, 4 A.L.R.2d 1077. In fact, some courts have gone so far as to say that an instruction based on the maxim should not be given. *Knihal* v. *State,* 150 Neb. 771; 53 Am. Jur., Trial, § 784. Most courts maintain that the giving of the instruction is within the discretion of the court and agree that the failure or refusal to give an instruction based on the maxim is not prejudicial error. Note, 4 A.L.R.2d 1077, and cases cited; Holden & Daly, Conn. Evidence §§ 63a, 125a.

The defendant requested the court to charge the jury that since the state failed to call Chief Triano as a witness the jury might infer that his testimony would be unfavorable to the state. The court did not do so. It is a well-settled rule that if a party knows of the existence of an available witness on a material issue and the witness is within his control, and if, without satisfactory explanation, the party fails to call the witness, the jury may draw the inference that the testimony of the witness would not have been favorable to the party. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675; 29 Am. Jur. 2d, Evidence, § 180. In the present case, however, the testimony of Chief Triano at the first trial was equally available to both parties. The testimony was of a cumulative nature and did not reflect any peculiar or superior information. Furthermore, contrary to the defendant's contentions, the chief was available at the time the defense proceeded with its case. The defendant, who employed the same counsel at both trials, neither subpoenaed the chief as a witness nor requested an adjournment of the trial for the

purpose of bringing this witness to court. General Statutes § 54-2a; Practice Book § 468. As stated in *Secondino,* supra, 676, "The failure of a party to call as a witness a person who is available to both parties and who does not stand in such a relationship to the party in question or to the issues that that party would naturally be expected to produce him if his testimony was favorable affords no basis for an unfavorable inference." See also *State* v. *Alterio,* 154 Conn. 23, 31; *Yavis* v. *Sullivan,* 137 Conn. 253, 263; *Ezzo* v. *Geremiah,* 107 Conn. 670, 677; *State* v. *Dayton,* 23 Conn. Sup. 271, 274, 1 Conn. Cir. Ct. 192, 195; Underhill, Criminal Evidence (5th Ed.) § 171, p. 325. The court properly refused to charge as the defendant requested.

The defendant makes several attacks upon the court's charge to the jury regarding the pool-selling statute. Since § 53-295 is a lengthy statute, the court did not read the entire statute to the jury but only the pertinent portions thereof. Such action is entirely consistent with proper judicial procedure. Maltbie, Conn. App. Proc. § 77; 2 Wright, Conn. Jury Instructions § 718. Thereafter, the court proceeded to define various terms used in the statute and distinguished these from other terms and other statutes. The defendant complains that the court did not adequately define the term "pool selling" to the jury. But the defendant did not request a charge on a specific definition of the term and therefore is not in a position to complain. *D'Addario* v. *American Automobile Ins. Co.,* 142 Conn. 251, 256. Furthermore, the court did charge that "[a] pool in gambling is the totality of bets upon a contingency. Pool selling involves the selling—evokes the selling or distribution of shares or chances in a wagering enterprise, on the outcome of an event." This definition conforms in substance, if not in form, to the definition espoused by the defendant and has been

endorsed by the courts of this state. The defendant also attacks the court's charge on the terms "tally sheet" and "lines" or "point spreads." The defendant did not request specific definitions of these terms and therefore should not complain. Ibid. And again, the defendant does not quote the complete charge by the court concerning these terms. The court stated: "The statute also prohibits one from having in his possession and upon his premises papers such as a tally sheet, a register of the results of pool selling, wages, and apparatus used for the purpose of assisting in pool selling. If you find that the defendant had such a tally in his possession, under his control, then he violated the statute." If this portion of the charge is read with the charge as a whole, it meets the test of correctness and adequacy and should be sustained. *State* v. *Johnson,* 139 Conn. 89, 93; *State* v. *Tomassi,* 137 Conn. 113, 124.

The charge considered as a whole fairly described to the jury the class covered by § 53-295 as well as some of the classes excluded. This disposes of the defendant's claim that the charge was erroneous in regard to the class of bettors excluded from the pool-selling statute. The charge stated the correct principles to guide the jury so that no injustice would result. Maltbie, Conn. App. Proc. § 92. As stated in *Farlow* v. *Connecticut Co.,* 147 Conn. 644, 648, "'A charge . . . is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict . . . .'" There is no merit to any of the defendant's attacks on the court's charge to the jury regarding the pool-selling statute.

There is no error.

In this opinion DEARINGTON, J., concurred; JACOBS, J., concurred in the result.