Jacob SCHAEFER, Appellee,

v.

Daniel LEONE, Warden, Hartford Correction Center, Appellant.

No. 311, Docket 34493.

United States Court of Appeals, Second Circuit.

Argued Jan. 27, 1971.

Decided May 24, 1971.

John F. Mulcahy, Jr., Deputy Chief Prosecutor, New Haven, Conn., for appellant.

John P. McKeon, Hartford, Conn., for appellee.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

Daniel Leone, Warden of the Hartford Correctional Center, appeals from the granting of appellee Jacob Schaefer's petition for a writ of habeas corpus. The sole issue presented for review is whether a misstatement of Connecticut law by a Connecticut trial court to a jury regarding provable elements of the crime charged, held by the Connecticut appellate courts to constitute nonreversible error, is a question of constitutional dimension thereby creating a substantial federal question cognizable by the federal courts under their habeas corpus jurisdiction. We reverse.

## FACTS AND PROCEDURAL HISTORY

Appellee Schaefer sought release from imprisonment following his conviction by a jury on March 18, 1968,[1] on a single count of "pool selling" in violation of the Connecticut anti-pool selling statute, Conn.Gen.Stat. § 53–295, the text of which is reproduced in the margin.[2] Evidence seized from Schaefer's possession which was introduced at trial included two pieces of paper identified at trial as bookmakers' "tally sheets," a National Armstrong Daily (a publica-

---

1. State v. Schaefer, CR–17–5828 (Cir.Ct. 17, March 18, 1968).

2. Section 53–295 reads as follows:
   "Pool Selling.
   Any person, whether as principal, agent or servant, who owns, possesses, keeps, manages, maintains or occupies, or assists in keeping, managing, maintaining or occupying, any building, room, office, park, ground, enclosure or place with apparatus, books or boards or any device for the purpose of making, recording or registering bets or wagers, or of buying or selling pools upon the result of any trial or contest of skill, speed or endurance of man, beast, bird or machine, or upon the result of any game, competition, political nomination, appointment or election, whether such trial, contest, game, competition, nomination, appointment or election takes place either within or without this state, or where pool selling of any kind, either directly or indirectly, is permitted or carried on, or in which the business of transmitting money to any race track or other place there to be placed or bet on any horse race, game, sport, competition, nomination, appointment or election, whether within or without this state, is permitted or carried on in any manner, and any person who keeps a place which is reputed to be a place resorted to for the purpose of selling pools upon the result of any election, and any person who makes, records or registers any such wagers or bets, or buys or sells, or is concerned in buying or selling, any such pools, or in carrying on the business of the transmission of money to any race track or other place there to be bet or placed on any horse race, game, sport, competition, nomination, appointment or election, whether within or without this state, and any person who, being the owner, lessee or occupant of any building, room, park, ground, enclosure or place, or part thereof, knowingly permits the same to be used or occupied for any such purpose, on the first conviction shall be fined not more than one thousand dollars or be imprisoned not not more than one year or both fined and imprisoned; and on a second or subsequent conviction shall be fined not less than five hundred dollars nor more than three thousand dollars and be imprisoned not less than thirty days nor more than three years; and each day of such owning, keeping, occupying, permitting any person who becomes the custodian or depositary of any pools, money, property or thing of value, in or transmitting shall constitute a separate offense. Any manner wagered or bet upon such result or of any apparatus of any kind used for the purpose of assisting in buying or selling any such pools or making any such wagers or bets, shall be punished in like manner. The provisions of this section shall not prohibit the giving of purses or premiums for any trial or contest of skill, speed or endurance of man, beast, bird or machine and the charging of an admission or entrance fee to any contestant in any such trial or contest."

tion containing current racing information and betting odds), several football schedules containing handwritten numbers identified at trial as "lines" or "point spreads" and the charred remains of other papers retrieved from Schaefer's fireplace identified at trial as bookmakers' "worksheets" containing notations of names, initials and dollar amounts.

Schaefer appealed his conviction to the Appellate Division of the Connecticut Circuit Court, claiming, in part, error in the charge to the jury. The conviction was affirmed,[3] the court finding that "[r]eading this portion of the charge as well as the charge as a whole, it meets the test of correctness and adequacy and should be sustained."[4] On September 24, 1969, the Connecticut Supreme Court refused to certify the jury charge issue for appeal.[5] Having exhausted his State remedies, Shaefer petitioned the United States District Court for a writ of habeas corpus on October 6, 1969, pursuant to 28 U.S.C. § 2254.

## DISCUSSION

The thrust of Schaefer's petition is that the trial court's assumed misinterpretation of the requirements of the applicable Connecticut statute in his charge to the jury (which is set forth in the margin),[6] in failing to include reference to criminal intent,[7] resulted in

Shaefer's allegedly unconstitutional conviction of a nonexistent crime, in violation of his rights under the First, Fifth and Fourteenth Amendments. Although the challenged instruction concededly was objected to specifically and in timely fashion, and although "mere possession" is not one of the five sets of circumstances under which one can be found guilty of "pool selling" in Connecticut, we reverse because the District Court did not properly have jurisdiction over Shaefer's habeas corpus petition, as it had not raised any question of substantial constitutional significance.

In justifying the existence of a fundamental question of constitutional significance, Schaefer and the District Court have relied on the authority of Cole v. Arkansas.[8] In *Cole,* the Supreme Court reversed convictions which had previously been affirmed by State appellate courts on the basis of a substantive statutory section completely different from that for the violation of which the defendants were charged, tried and convicted in the first instance. As this *precis* and the language of *Cole* itself indicate the issue there was one of reasonable notice to a defendant of the charge brought and a fair opportunity to prepare and present a defense thereto. No allegation of constitutionally inadequate notice is made here. Rather, Schaefer strongly urges us to uphold the District Court's reliance on *Cole* and asks us to disregard the facts (1) that he had fair

3. State v. Schaefer, 5 Conn.Cir. 669, 260 A.2d 623 (June 13, 1969).

4. 260 A.2d at 632.

5. State v. Schaefer, Vol. XXXI, No. 15, Conn.L.J. 9 (1969).

6. The trial court's charge with respect to the statutory elements of the crime of "pool selling" in pertinent part reads as follows:
   153. *"The statute also prohibits one from having in his possession and under his control a betting line. It does not specifically say so,* or odds upon football games as the possession of this line or odds as [is] prohibited by that portion of the statute which prohibits one from being concerned in pool sell-

ing. *And, if you find that the defendant did have such a line or lines or odds in his possession and under his control, you should find him guilty in this respect."* [Emphasis supplied.]

7. What the trial judge arguably did through the challenged instruction was to afford the jury the opportunity to convict Schaefer under § 53-295 without apprising them of the necessary element of "possession *for the purpose of* buying or selling pools." [Emphasis supplied.] This omission the District Court found the Connecticut trial judge without constitutional authority to do. Memorandum of Decision at 15a.

8. 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948).

notice of the substantive charge against him, and (2) that he was afforded a full and fair trial thereon, followed by appellate review of the jury instruction question through Connecticut's highest court.

Morissette v. United States,[9] also relied upon by Schaefer and the District Court in attempting to demonstrate the "fundamental unfairness" of the State trial court's error of omission, is clearly distinguishable from the case at bar. *Morissette* was concerned not at all with any constitutional question, but solely with determining the import of Congressional omission of the requirement of guilty intent in a statutory offense. The Supreme Court in *Morissette* granted certiorari for the narrow purpose of reviewing a federal trial court's instruction with respect to the elements of a federal offense in its supervisory capacity over the federal courts.

Upon the facts here presented, we hold that the legality of Schaefer's conviction was properly the exclusive province of the Connecticut courts.[10] Were we to hold otherwise, the District Court's rationale would turn every disagreement by a federal district judge with a State court's interpretation of a State statute and their appraisal of a State trial court's instructions thereunder potentially into a question of "fundamental due process." This result would impose an additional burden on our already overburdened federal courts and pose an unnecessary and undesirable threat of greatly increased federal intervention in cases involving the sufficiency of jury instruction and the construction of State law. Any such interpretation would be contrary to the proper role of historic federal habeas corpus jurisdiction, namely, not to serve as the basis

for merely an additional appeal.[11] As the Supreme Court has stated:

"His [the trial judge's] action has been affirmed by the highest court of the Commonwealth. We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."[12]

Reversed.

9. 342 U.S. 246, 263, 72 S.Ct. 240, 96 L. Ed. 288 (1952).

10. Gemmel v. Buchkoe, 358 F.2d 338, 341 (6th Cir.), cert. denied, 385 U.S. 962, 87 S.Ct. 402, 17 L.Ed.2d 306 (1966) (allegedly erroneous instruction with regard to the theory of murder in the perpetration of a robbery).

11. See Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960) (Sobeloff, Ch. J.) ; Gemmel v. Buchkoe, 358 F.2d 338, 340 (6th Cir.), cert. denied, 385 U.S. 962, 87 S.Ct. 402, 17 L.Ed.2d 306 (1966).

12. Gryger v. Burke, 334 U.S. 728, 731, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948).