DeWitt R. LEE, Petitioner,

v.

Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Auburn, New York, Respondent.

Civ. No. 1971–417.

United States District Court,
W. D. New York.

May 8, 1972.

James C. Heaney, Buffalo, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen., of New York (Richard R. Jenczka, Buffalo, N. Y., of counsel), for respondent.

CURTIN, District Judge.

Petitioner has applied for a writ of habeas corpus. In accordance with an order of the court dated September 16, 1971, respondent has produced the entire record in petitioner's case.

On February 18, 1959 petitioner and two codefendants, Henry Flakes and Walter T. Green, were found guilty of murder in the first degree by a jury in Erie County Court. On March 9, 1959 petitioner was sentenced to life imprisonment by Judge Jacob A. Latona. Petitioner appealed to the Supreme Court, Appellate Division, Fourth Department, and on July 15, 1967 the court ordered that determination of the appeal be withheld pending a hearing in Erie County Court to determine the voluntariness of certain statements of petitioner used as evidence against him at trial. 28 A.D.2d 808, 281 N.Y.S.2d 617. Judge Latona conducted a hearing pursuant to the procedures outlined in People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E. 2d 179 (1965), and on December 13, 1967 entered a memorandum opinion in which he found that the People had proved beyond a reasonable doubt that petitioner's statements were voluntarily made. On May 9, 1968 the Appellate Division affirmed petitioner's conviction, 30 A.D.2d 642, 291 N.Y.S.2d 778, and on July 11, 1970 the Court of Appeals affirmed. 27 N.Y.2d 705, 314 N.Y.S.2d 17, 262 N.E.2d 222.

Petitioner's application and a memorandum submitted to the court by his retained attorney allege several errors committed by the state courts. All of the errors alleged will be discussed but not in the order they are set forth in counsel's memorandum.

■ At the outset it should be noted that the sole task before this court is to determine whether the alleged errors constitute violations of petitioner's rights under the United States Constitution. The court has jurisdiction to entertain an application for a writ of habeas corpus only on the ground that

petitioner's confinement violates the Constitution, 28 U.S.C. § 2254(a), and therefore it may not correct mere errors of state law. See Schaefer v. Leone, 443 F. 2d 182 (2d Cir. 1971).

■■ Several of petitioner's claims relate to the court's charge to the jury. Specifically, he complains (1) that while the court charged that petitioner could be considered an accessory after the fact, it did not define the term; (2) that the court charged that the presumption of innocence flowed from petitioner's plea of not guilty, and (3) that the court failed to charge with respect to corroboration. While an error in a jury charge may be so fundamental that it constitutes a deprivation of due process of law, Higgins v. Wainwright, 424 F.2d 177 (5th Cir. 1970), the instructions and the failure to give certain instructions here alleged as errors do not raise questions of substantial constitutional significance giving the court jurisdiction to issue a writ of habeas corpus. See Schaefer v. Leone, supra.

■■ Two more of petitioner's claims relate to post-arrest police conduct. The first is that petitioner was not brought before a magistrate until the day after he was taken into custody and interrogated by the police, which delay violated the then applicable New York law. See N.Y. Code of Cr.Proc. § 165 (McKinney's 1958). The other claim is that petitioner's constitutional rights were violated by interrogation after the police had denied his request that he be allowed to call his father so that his father could obtain an attorney for him. Proving that a state law was violated by an unreasonable delay in bringing petitioner before a magistrate would not in and of itself provide a sufficient ground for granting habeas corpus. See United States ex rel. Wade v. Jackson, 256 F.2d 7 (2d Cir.), cert. denied, 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158 (1958); United States ex rel. Ali v. Deegan, 298 F.Supp. 398 (S.D.N.Y.1969). Nor under the law prevailing at the time of

petitioner's trial,[1] would a sufficient ground be provided solely by proof that petitioner's alleged request to call his father was denied. *See* Monts v. Henderson, 409 F.2d 17 (6th Cir. 1969).

■ While petitioner has not directly challenged the trial court's finding that his statements in response to interrogation by the police were voluntarily made, this court has carefully read the transcript of the *Huntley* hearing conducted by the state court in order to determine whether petitioner received a full and fair hearing resulting in reliable findings of the material facts relating to the voluntariness of petitioner's statements. Concluding that petitioner has received such a hearing, the court believes that another hearing need not be held on the voluntariness issue. *See* Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963). In addition, the court is satisfied that the state court examined the totality of circumstances surrounding the taking of petitioner's statements to determine if his will was overborne so that the giving of the statements were not free and voluntary acts. *See* Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971); Greenwald v. Wisconsin, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

■ Petitioner testified at the *Huntley* hearing that the district attorney directed the police not to let him call his father. He contends that this testimony was uncontradicted and that therefore the trial judge was required to accept it as true. *Cf.* Haynes v. Washington, *supra.* As a matter of fact, although the district attorney testified at the hearing, petitioner's counsel did not ask him whether he had prevented petitioner from

calling his father. The district attorney did, however, directly controvert other testimony of petitioner when asked about it. In addition, he testified that he did not threaten petitioner or promise him anything. Even if the event testified to by petitioner was not directly or indirectly controverted, the hearing judge was not required to accept it as fact. *See* United States ex rel. Liss v. Mancusi, 427 F.2d 225, 227, n. 4 (2d Cir. 1970); Walker v. Beto, 387 F.2d 626 (5th Cir. 1967). As was the case in *Liss,* the circumstances surrounding petitioner's statement to the police indicate that the statement was voluntary. Petitioner voluntarily contacted the police and set a time and place at which it was convenient for him to meet them. His interrogation lasted only two hours, and the dictation of his statement itself took an hour and a quarter of that time. These circumstances do not indicate the coercion which led to the holding that the confession in *Haynes* was involuntary. *See* United States ex rel. Hughes v. McMann, 405 F.2d 773, 777 (2d Cir. 1968).

The holding that petitioner's statements to the police were voluntarily made renders unnecessary any determination whether the failure of petitioner's counsel at trial to object to the introduction of the statements was a deliberate decision as a matter of trial strategy to bypass challenging the voluntariness of the statements. *See* United States ex rel. Cruz v. LaVallee, 448 F.2d 671 (2d Cir. 1971).

■ Petitioner contends, however, that the *Huntley* hearing conducted by the state judge was insufficient because proof was limited to the voluntariness of his own statements and no proof was allowed on the question of the voluntariness of the statements made to police by petitioner's codefendant Green. Petitioner has no standing, however, to challenge the voluntariness of his codefend-

1. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), does not aid petitioner, as it has not been retroactively applied. *See* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

ant's statements. The privilege against self-incrimination is personal to the person from whom an allegedly involuntary statement is taken. *See* Byrd v. Comstock, 430 F.2d 937 (9th Cir. 1970). *Cf.* Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

Petitioner next contends that he was deprived of his right of confrontation under the Sixth Amendment by the introduction into evidence of a statement made to the police by his codefendant Green and the failure of Green to testify at their trial. *See* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), holding that in a joint trial the introduction of the statement of one defendant which incriminates a codefendant may violate the latter's right of cross-examination, and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), applying the *Bruton* rule retroactively to both state and federal prosecutions. A later Supreme Court case, Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), indicates, however, that a conviction need not be overturned where the violation of the *Bruton* principle can be said to be harmless beyond a reasonable doubt. In *Harrington*, "special facts," *id.* at 253, 89 S.Ct. 1726, 23 L.Ed.2d 284, led the court to conclude that the *Bruton* violation was harmless error. The "special facts" appear to be the fact that Harrington himself made a statement which, though not a confession, placed him at the scene of the crime, and the fact that there was overwhelming evidence against Harrington apart from the statements of his codefendants. *See* Metropolis v. Turner, 437 F.2d 207, 209 (10th Cir. 1971). *See also* United States ex rel. Catanzaro v. Mancusi, 404 F.2d 296, 300 (2d Cir. 1968), cert. denied, 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970).

The instant case is similar to *Harrington*. Petitioner was convicted of felony murder after driving his codefendants to and from Lackawanna, where the codefendants robbed a store and killed the owner. Petitioner's own statement to the police and his testimony at trial established that early the day of the crime he had driven from Buffalo to Lackawanna with his codefendants and had entered the store alone to ask about purchasing a coat, and that later in the day he again drove his codefendants back to the store, waited nearby for them while they went inside and then drove them back to Buffalo. While denying any involvement in the crime, petitioner, in his statement and testimony, admitted that he knew his codefendants were going to commit a robbery. Green's statement to the police,[2] introduced into evidence

2. In pertinent part, Green's statement to the police read as follows:

"Q. Now, Green, sometime on Friday last, you were out to a place in Lackawanna? A. That's right.

"Q. And at that time 'Snow Flakes' was with you? A. That's right, and another fellow by the name of DeWitt.

"Q. What time of day did you and the other two fellows go to Lackawanna? A. About 9:30 or 10:00.

"Q. In the morning? A. In the morning.

"Q. And what conversation had you had with either of the other two fellows before you went to Lackawanna? A. Well, Snow Flake said he knew of a place where we could get some money and some clothes, and that it would be easy, so I consented to go along. When we got out there, his brother-in-law went in to try some overcoats.

"Q. Who is the brother-in-law? A. DeWitt.

"Q. He went in and tried some clothes on? A. Yes, and looked the place over.

"Q. And then what? A. He came outside and said that it was real ripe.

. . . . .

"Q. When you went to Lackawanna in the first place did you have Joe's Clothing Store in mind? A. Yes.

"Q. When did that first come up? A. Snowflake was telling me about it.

"Q. When did Snowflake tell you about it? A. In the morning, before we left.

"Q. About 9:30 or 10? A. Yes.

"Q. What did Snowflake say? A. He said I know a place where we can get some clothes and money, and it would be easy.

with a cautionary instruction that it was admissible only against Green and not against his codefendants, contradicted petitioner's contention that he was not a party to the crime.

There was, however, other overwhelming evidence showing petitioner's involvement in the crime. Even though he knew that a robbery was planned, petitioner delivered to his codefendants the gun which fired the bullet removed from the victim. Petitioner's girlfriend, who accompanied the defendants on their second trip to Lackawanna, testified that there was no conversation between petitioner and his codefendants as to where he should drive them, that, when the automobile stopped near the victim's store, petitioner told his codefendants, "We will wait here for you," and that, when the codefendants returned, he said to them, "I didn't hear any caps." The girlfriend also testified that, after the money taken in the robbery was counted in the automobile, one of the codefendants asked, "Does DeWitt get a full share," and the other answered, "Of course, he does." Even when the girlfriend was handed some money and told, "This is DeWitt's share," petitioner said nothing. Finally, later in the evening the girlfriend asked petitioner, "Why did you drag me into this," and he responded, "Yes, I know." Petitioner's brother testified that after petitioner had returned to Buffalo he told the brother, "We pulled a job." At trial petitioner recalled making this statement to his

brother. Petitioner's brother also testified that when petitioner heard a radio news bulletin concerning a pawn shop robbery, petitioner said that "it couldn't have been the place because it wasn't a pawn shop."

■ Another of petitioner's claims is that he was convicted solely on the confession of his codefendant Green and that this accomplice confession must be corroborated in order to support a conviction. This argument is without merit. The requirement of corroboration is a state rule going to the sufficiency of the evidence to support a conviction. No constitutional problem is raised unless the conviction is so devoid of evidentiary support that a due process issue is raised. *See* Johnson v. Turner, 429 F.2d 1152 (10th Cir. 1970); United States ex rel. Morton v. Mancusi, 393 F.2d 482 (2d Cir.), cert. denied sub nom. Morton v. New York, 393 U.S. 927, 89 S.Ct. 262, 21 L.Ed.2d 264 (1968). As already indicated, there is substantial evidence aside from Green's confession which supports the jury's verdict.

On this record, the court "believe[s] beyond a reasonable doubt that the jury would not have reached a different verdict solely on the basis of the properly admitted evidence." Stone v. United States, 435 F.2d 1402, 1406 (2d Cir. 1970). The case against petitioner "was not woven from circumstantial evidence." Harrington v. California, *supra*, 395 U.S. at 254, 89 S.Ct. at 1729, 23 L.Ed.2d 284,

"Q. Did he mention Joe's Clothing Store? A. Yes.

"Q. What else was said about Joe's Clothing Store at the time? A. That was all that was said at the time.

"Q. Did you understand by that that the three of you were going out and stick up the store? A. That's right.

"Q. Did you have a gun? A. Not until I got there.

"Q. Do you know whether or not anyone else had a gun? A. I know Snowflake had a gun.

*    *    *    *    *

"Q. What did you do when you got there? A. When we got there I got an empty .25 automatic that DeWitt had and I put it in my pocket.

*    *    *    *    *

"Q. At that time all three of you intended to hold the place up? A. That's right.

"Q. Where was the third fellow, DeWitt? A. Sitting in the car.

"Q. Now had there been an arrangement ———— A. Yes.

"Q. Now wait: had there been an arrangement between you and Snowflake to have DeWitt sit outside to get the car ready for a get-away? A. That's right.

"Q. What was the conversation about that? A. Well, originally he was supposed to go in too, but since he had his girlfriend with him he decided to sit outside."

and his girlfriend and brother were not witnesses of doubtful veracity, as were the witnesses in United States v. Castello, 426 F.2d 905 (2d Cir. 1970).

Petitioner's final claim is that the failure of the state to furnish him with counsel on appeal until 1967 violated his constitutional rights. No denial of appellate counsel appears to have been complained of in petitioner's appeal to the Appellate Division, and the issue was apparently raised for the first time in a short paragraph of petitioner's reply brief in the Court of Appeals. Leaving open the question whether petitioner has exhausted his state remedies as to this issue, the court, in the interests of economy of judicial effort, will decide the claim on the merits. *See* United States ex rel. Di Niro v. Mancusi, 298 F.Supp. 1294, 1295, n. 1 (S.D.N.Y.1969). It is clear that failure to warn a person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to himself by counsel appointed by the state if he is indigent is a ground upon which federal habeas corpus may issue. *See* United States ex rel. Smith v. McMann, 2 Cir., 417 F.2d 648 (1969). *See also* Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), applied retroactively in Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964). In this case the record is not clear as to whether petitioner was informed of these appellate rights. *See* United States ex rel. Witt v. LaVallee, 424 F.2d 421 (2d Cir. 1970). It is not necessary to hold a hearing on this question, however, as any constitutional infirmity was cured by ultimate prosecution of petitioner's appeal by appointed counsel. As the Court of Appeals for the Second Circuit wrote in United States ex rel. Smith v. McMann, *supra*, 417 F.2d at 655:

> Our holding does not require that a verdict be upset for failure to warn, but only that the state should allow the completion of appellate review, with counsel if a prisoner so desires. If an appeal is taken and material trial error is found by a state appel-

late court, there may be a new trial required with the familiar difficulties of proof long after the event. But that is only if the state courts find that the conviction on which the imprisonment was based was wrong in the first place.

Petitioner's application for a writ of habeas corpus is denied.

Certificate of probable cause is denied.

Permission to appeal in forma pauperis is also denied, with the qualification that the petitioner may file with the Clerk of the United States District Court, United States Court House, Buffalo, New York, a notice of appeal, without the payment of filing fees.

This denial does not prevent the petitioner from applying directly to the Court of Appeals for the Second Circuit, United States Court House, Foley Square, New York City, for a certificate of probable cause, and for permission to prosecute an appeal in forma pauperis.

So ordered.