Norman HOWARD, Petitioner,

v.

Ennis OLGIATI, Chairman, Board of Parole, New York State, Respondent.

Civ. No. 76–282.

United States District Court,
W. D. New York.

Aug. 18, 1977.

Norman Howard, pro se.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, James L. Kennedy, Asst. Atty. Gen., Buffalo, N. Y., of counsel, for respondent.

### MEMORANDUM and ORDER

ELFVIN, District Judge.

Petitioner, currently paroled from a custodial sentence, submitted an application for a writ of habeas corpus under the provisions of Title 28, United States Code, Section 2254(a).

On September 6, 1974 petitioner was found guilty of the crime of Grand Larceny in the Third Degree in violation of sections 20.00 and 155.30(1) of the New York Penal Law following a non-jury trial before the Honorable Ernest L. Colucci, Judge of the Erie County Court. On March 27, 1975,

judgment was entered sentencing petitioner to an indeterminate term of imprisonment having a maximum term of three years.

Following timely appeal, the New York Supreme Court, Appellate Division, Fourth Department, affirmed the conviction December 5, 1975. Petitioner subsequently was denied leave to appeal by the Court of Appeals of the State of New York. This petition followed.

At the outset, it should be noted that my sole task is to determine whether the errors allegedly committed by the state courts constitute violations of petitioner's rights under the United States Constitution. This court has jurisdiction to entertain an application for a writ of habeas corpus only on the ground that petitioner's confinement violates the Constitution or the laws of the United States. 28 U.S.C. § 2254(a).[1] Such writ may not issue to correct mere errors of state law. See, Schaefer v. Leone, 443 F.2d 182 (2d Cir. 1971); Lee v. Henderson, 342 F.Supp. 561 (W.D.N.Y.1972).

The burden of proof on a habeas corpus application falls on the one who seeks relief in federal court from a state conviction. He must establish by a preponderance of the evidence that the facts entitle him to a discharge from custody.

Petitioner alleges three grounds in challenging his conviction. Specifically he contends that (1) cross-examination of the only identification witness was unduly restricted by the court thereby denying him a fair trial, (2) the evidence does not support the verdict, and (3) the court was impermissibly influenced to find petitioner's co-defendant, Richard Balsano, not guilty to the prejudice of petitioner.

As to the third ground alleged, a review of the state records on the appeal and the petition for writ of habeas corpus indicates that this is the first time that this relief has been sought. In a habeas corpus action, a petitioner in state custody has the burden of proving that he has exhausted his state court remedies to challenge the propriety of his conviction. 28 U.S.C. § 2254(b); United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707 (2d Cir. 1960); United States ex rel. Cuomo v. Fay, 257 F.2d 438 (2d Cir. 1958), cert. denied, 358 U.S. 935, 79 S.Ct. 325, 3 L.Ed.2d 307 (1959). Petitioner has not met this burden as to ground (3). The petition is dismissed as to the third ground. It is conceded by the state that exhaustion of state remedies as to the first and second grounds was accomplished.

A brief summary of the facts and rulings of the trial court is indispensable for an understanding of this case.

A phone call was received August 30, 1972 by Henry Rothschild, owner of J. Rothschild, Inc. (a wholesale tobacco firm), placing an order for six cases of cigarettes. They were to be delivered to a Wilson Farms Food Shop on Englewood Avenue in the Town of Tonawanda, N. Y. the following morning. Henry Rothschild testified that he had never previously done business with that store and did not know who had called. It was established that the owner of the store in question had not ordered the cigarettes and that he had not authorized anyone to do so on his behalf.

On the following day, Terry Rothschild, a clerk-deliveryman with J. Rothschild, Inc., delivered the cigarettes as ordered. When he arrived at the store's front entrance, a man whom he later identified as petitioner came out of the store and instructed him to pull his truck to the "receiving area" on the side of the building next door. Terry Rothschild did as directed. There he was met by a second man whom he later identified as Richard Balsano. Balsano told Rothschild that he was waiting for the delivery but that he did not have the key for the "receiving area". Thereupon, Rothschild placed the cigarettes in front of the

1. "(a) The Supreme Court, Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

"receiving area" door while they waited for the key. Petitioner then reappeared and directed Rothschild to go into the store to be paid. He did so, but no one in the store, including the owner, John B. Di Miceli, knew anything about the cigarettes. When Rothschild returned to the "receiving area", both men and the cigarettes had disappeared. Terry Rothschild contacted the police and notified them of the incident and generally described the two men.

On September 1, 1972 the Town of Tonawanda police took an unspecified number of photographs to Terry Rothschild's house but Rothschild was unable to identify any of the suspects as being either of the men at the store. On September 13, 1972, he appeared at the Town of Tonawanda police station and was shown a second series of photographs of suspects. At this time he picked out Norman Howard and Richard Balsano as the two men at the store.

A preliminary hearing was held September 21, 1972 in the Tonawanda Town Justice Court. Prior to appearing in court, Terry Rothschild was informed that the suspects whose pictures he had selected would be in court and that they were accused of a similar type of theft from another tobacco wholesaler. At the preliminary hearing, Terry Rothschild identified the two suspects.

At the trial which commenced September 3, 1974, petitioner and his co-defendant were represented by the same attorney. The prosecution's case presented three witnesses. Henry Rothschild testified as to receipt of the "order" to deliver cigarettes to the store in question. John B. Di Miceli testified that no order had been made by him or by anyone authorized by him. Terry Rothschild identified the two defendants and testified as to the events of August 31, 1972 and on cross-examination testified as to the prior identifications of the defendants. During the cross-examination of Terry Rothschild the defense attorney attempted to test the credibility of his identification testimony by exploring the circumstances of prior photographic and in-person viewings of the defendants. The trial judge allowed some questions about the photographic viewings on September 1st and 13th of 1972 and before the Grand Jury, but refused, in spite of repeated requests by defense counsel, to order the pictures produced and limited the scope of the questioning concerning the circumstances of the viewing. The primary reason given by the trial judge for such restriction was that defendants' failure to request a Wade hearing—i. e., a pre-trial hearing seeking a determination that the in-court identification of a defendant was so impermissibly suggestive to warrant exclusion of the witness's identification testimony—waived their right to cross-examine the identification witness on trial as to the circumstances of his identification.

The defense offered no evidence.

Finding the identifications by Terry Rothschild to be credible, Judge Colucci found petitioner guilty of Grand Larceny in the Third Degree. He, however, found petitioner's co-defendant not guilty because of insufficient evidence as to his involvement in the theft of the cigarettes.

■ The restrictions placed by the trial judge upon the cross-examination of the only witness connecting petitioner to the crime for which he was convicted raises serious constitutional questions. A substantial denial of the right of cross-examination without waiver is constitutional error which no amount of showing of want of prejudice will cure. *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

" * * * The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process' *Dutton v. Evans,* 400 U.S. 74, 89 [91 S.Ct. 210, 220, 27 L.Ed.2d 213] (1970); *Bruton v. United States,* 391 U.S. 123, 135–137, [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968). It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' *Pointer v. Texas,*

380 U.S. 400, 405 [85 S.Ct. 1065, 1068, 13 L.Ed.2d 923] (1965)" *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).

■ The question is not whether the refusal to permit the desired cross-examination was erroneous as an evidentiary matter, but whether it deprived appellant of a fundamentally fair trial in violation of the due process clause of the Fourteenth Amendment. *See, Buchalter v. New York,* 319 U.S. 427, 431, 63 S.Ct. 1129, 87 L.Ed. 1492 (1943). This court is not required to find that the trial would have reached a different result had petitioner been allowed to carry out his line of impeachment. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *United States ex rel. Washington v. Vincent,* 525 F.2d 262 (2d Cir. 1975), *cert. denied sub nom. Bombard, Correctional Superintendent v. Washington,* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976). It is sufficient for the granting of habeas corpus relief that the denial calls into question the ultimate integrity of the fact finding process. *Berger v. California,* 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

■ Pursuant to New York Criminal Procedure Law §§ 710.40 and 255.20,[2] in effect at the time of trial, a motion to suppress evidence was required to be made before trial. No suppression motion was filed before petitioner's trial. Therefore, petitioner waived his right to a pre-trial determination that the in-court identification of petitioner was so impermissibly suggestive as to warrant exclusion of that identification. *See, United States ex rel. Tarallo v. LaVallee,* 433 F.2d 4 (2d Cir.

1970), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971). However, such a waiver of the pre-trial suppression hearing is not a waiver of petitioner's right to cross-examination.

■ The purpose of the pre-trial hearing is to determine out of the presence of the jury if the identification to be offered at trial is tainted by impermissibly suggestive circumstances. Although the ability of a witness to observe and remember is considered at the pre-trial hearing, no ultimate determination of credibility is made at that time. Even where a hearing reveals that a proposed in-court identification has not been tainted and, therefore, is properly admissible in evidence, it nevertheless is contemplated that defense counsel may bring out during the trial and in front of the jury the pre-trial confrontation. *Clemons v. United States,* 133 U.S.App.D.C. 27, 408 F.2d 1230, 1237 (1968).

*Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), is not helpful to respondent and does not direct a result different from that reached herein by me. At petitioner's trial the prosecution, in opposing cross-examination as to the photographs shown to the only identification witness, made no claim that the photographs were not readily available, the trial was conducted before a judge and without a jury and the defense counsel specifically sought the pictures in order to test the credibility of the only witness who tied petitioner to the crime. Although the witness made an in-court identification over two years had elapsed since the incident. Finally, not only were the pictures not permitted to be used on petitioner's behalf in

2. "§ 710.40 Motion to suppress evidence; when made and determined

"1. A motion to suppress evidence must be made after the commencement of the criminal action in which such evidence is allegedly about to be offered, and, except as otherwise provided in section 710.30 and in subdivision two of this section, it must be made within the period provided in subdivision one of section 255.20."

"§ 255.20 Pre-trial motions; procedure

"1. Except as otherwise expressly provided by law, whether the defendant is represented by counsel or elects to proceed pro se, all pre-trial motions shall be made within forty-five days after arraignment and before commencement of trial, or within such additional time as the court may fix upon application of the defendant made prior to entry of judgment. * * * If the defendant is not represented by counsel and has requested an adjournment to obtain counsel or to have counsel assigned, such forty-five day period shall commence on the date counsel initially appears on defendant's behalf."

cross-examination, but cross-examination concerning the general circumstances of the prior viewings of photographs was limited.

The Supreme Court has held that under certain circumstances a defendant's failure to comply with state procedural requirements will not be deemed a waiver of federal constitutional rights, unless it is shown that such bypass was the result of deliberate tactical decision. *See, Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). Petitioner's failure to request a pre-trial hearing was not a waiver of his right to cross-examine the identification witness.

Petitioner's failure to seek discovery of the photographs before trial is likewise not a waiver of his right to cross-examine. In light of the trial court's ruling, petitioner would have similarly been restricted in his cross-examination, even if discovery had been sought.

It is therefore hereby

ORDERED that the Writ of Habeas Corpus shall issue, unless a new trial is afforded to petitioner within sixty days of the filing of this order.